**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>**KIA BERARDINELLI LAMICQ,**<br>    Debtor. | Case No. 26-10471-KHT<br>Chapter 13<br>Hon. Kimberley H. Tyson |

## DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f)

### NOTICE OF MOTION

**OBJECTION DEADLINE: Pursuant to Fed. R. Bankr. P. 2002(a)(2) and 6004 and Local Bankruptcy Rule 9013-1, any response or objection to this Motion must be filed with the Court and served on the undersigned within TWENTY-ONE (21) DAYS from the date of service of this Motion. If no response or objection is timely filed, the Court may grant the Motion without further notice or hearing.**

Kia Berardinelli Lamicq, the above-captioned debtor (the **"Debtor"**), by and through undersigned counsel, hereby moves the Court for entry of an Order, pursuant to 11 U.S.C. §§ 363(b) and (f) and Federal Rules of Bankruptcy Procedure 2002 and 6004, authorizing the Debtor to sell real property of the bankruptcy estate located at 704 Huntington Drive, Highlands Ranch, Colorado 80126-4741 (the **"Property"**) free and clear of liens, claims, encumbrances, and other interests, with such interests to attach to the proceeds of sale in accordance with their respective priorities. In support of this Motion, the Debtor states as follows:

### I.  JURISDICTION AND VENUE

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M), and (N). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are 11 U.S.C. §§ 363(b) and (f), and Federal Rules of Bankruptcy Procedure 2002 and 6004.

## II.  BACKGROUND

3. On January 27, 2026 (the **"Petition Date"**), the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code, commencing the above-captioned case.

4. The Debtor is the sole record owner of the Property, which is the Debtor's principal residence. The Property is more particularly described as Lot 14, Highlands Ranch #97E, County of Douglas, State of Colorado, commonly known as 704 Huntington Drive, Highlands Ranch, Colorado 80126-4741.

5. The Property is encumbered by the following liens of record, in order of priority (collectively, the **"Liens"**). *The amounts shown below represent the highest-possible balances based on the Debtor's Schedules, filed proofs of claim, and other available information, and are stated conservatively for purposes of the § 363(f)(3) analysis below; final amounts will be governed exclusively by written payoff statements obtained at or before Closing and are expected to be equal to or lower than these figures.*

| No. | Lienholder | Approx. Balance (highest possible) | Nature of Lien |
|---|---|---|---|
| 1. | NBH Bank | $415,000.00 | First Deed of Trust |
| 2. | Tri State Mortgage | $45,000.00 | Second Deed of Trust |
| 3. | Highlands Ranch Community Association, Inc. | Per Assoc. payoff | Assessment / Statutory Lien |

*Note on figures: The lien balances above are intentionally stated at the highest end of the range supported by the Debtor's Schedules and the filed proofs of claim, in order to demonstrate § 363(f)(3) compliance under the most conservative scenario. The Estimated Seller's Closing Statement attached as Exhibit B reflects a lower preliminary NBH payoff figure of $392,500.00 and does not separately list a Tri State Mortgage payoff line. Final payoff figures will be governed by written payoff statements obtained at Closing.*

6. The Property is also subject to recorded covenants, conditions, and restrictions of the Highlands Ranch Community Association, Inc. (**"HRCA"**), including the HRCA Declaration that gives rise to its assessment lien.

7. The Debtor scheduled the Property at a fair market value of $710,000.00 on her Schedule A/B.

8. The Debtor's chapter 13 plan, as amended, contemplates that the Property will be sold and that the Liens will be satisfied in full from the proceeds of sale at closing, with any net balance distributed to the Debtor as exempt homestead funds pursuant to Colo. Rev. Stat. § 38-41-201, *et seq.*, to the extent permitted by applicable law.

## III.  THE PROPOSED SALE

9. On April 22, 2026, the Debtor (as Seller) and Wise Investments Limited (the **"Buyer"**) executed a Contract to Buy and Sell Real Estate (Residential)(Colorado Foreclosure Protection Act) (the **"CBS"**), a true and correct copy of which is attached hereto as Exhibit A. The CBS provides for the sale of the Property on the following material terms:

| | |
|---|---|
| **Buyer:** | Wise Investments Limited |
| **Seller:** | Kia Berardinelli Lamicq |
| **Property:** | 704 Huntington Drive, Highlands Ranch, CO 80126-4741 (Lot 14, Highlands Ranch #97E, Douglas County, Colorado) |
| **Purchase Price:** | $586,000.00, payable in U.S. Dollars |
| **Earnest Money:** | $3,500.00 (held by Equity Title of Colorado) |
| **Cash at Closing:** | $582,500.00 |
| **Broker Commissions:** | None. The transaction is a direct sale from the Debtor to the Buyer's limited liability company. No commissions are payable by either party. |
| **Closing Date:** | May 28, 2026, subject to written amendment of the CBS to accommodate the Court's approval timeline. |
| **Post-Closing Occupancy:** | Up to three (3) weeks after Closing, pursuant to an executed Post-Closing Occupancy Agreement. |
| **Conditions:** | The sale is subject in all respects to entry of an Order of this Court approving the sale pursuant to 11 U.S.C. §§ 363(b) and (f). |

10. The sale is an arm's-length transaction. The Buyer is a Colorado limited liability company controlled by Geoffrey Willcox. The Debtor and the Buyer have no familial or other affiliate relationship that would require additional scrutiny under 11 U.S.C. § 363(n).

11. The Purchase Price of $586,000.00 is fair and reasonable in light of (a) the Debtor's pre-petition pre-foreclosure status, (b) the absence of broker commissions, and (c) the present condition of the Property. The Purchase Price exceeds the aggregate amount of all Liens against the Property as set forth in Paragraph 5, satisfying the requirements of 11 U.S.C. § 363(f)(3).

## IV.  PROPOSED DISTRIBUTION OF NET SALE PROCEEDS

12. At Closing, the closing agent shall disburse the gross sale proceeds in the following order of priority, and the Debtor and undersigned counsel shall be authorized to direct the closing agent accordingly without further order of this Court:

(a) Customary and reasonable closing costs, prorations, transfer taxes, recording fees, and title charges payable by the Seller, as reflected on the final HUD-1 / ALTA Settlement Statement, including (per Exhibit B) county tax proration of $2,147.67, the 2nd half 2025 taxes payable to the Douglas County Treasurer of $2,665.89, the Equity Title real estate closing fee of $200.00, the tax certificate charge of $30.00, the water escrow payable to the Highlands Ranch Metro District of $3,000.00, and the HOA transfer fees payable to Association Online of $1,500.00;

(b) Payoff in full of the first deed of trust held by NBH Bank, in accordance with a written payoff statement valid through Closing (scheduled balance of up to $415,000.00; estimated payoff per Exhibit B of $392,500.00);

(c) Payoff in full of any second deed of trust held by Tri State Mortgage of record against the Property, in accordance with a written payoff statement valid through Closing (scheduled balance of up to $45,000.00);

(d) Payoff in full of the HOA assessment / statutory lien of the Highlands Ranch Community Association, Inc., including all pre-petition and post-petition assessments, late fees, attorneys' fees, and costs allowed by this Court or set forth in a written payoff statement provided by HRCA;

(e) Payoff in full of any other Lien of record on the Property in priority order as shown on the title commitment attached as Exhibit C;

(f) The net balance to the Debtor as exempt homestead funds pursuant to Colo. Rev. Stat. § 38-41-201, et seq. (subject to the statutory homestead cap then in effect); provided, however, that any portion of the net proceeds in excess of the Debtor's allowed Colorado homestead exemption shall be paid to the chapter 13 trustee. Exhibit B reflects an estimated net to the Debtor of $180,456.44, subject to refinement at Closing.

13. All Liens paid in full shall be released of record at Closing.

## V.  LEGAL AUTHORITY FOR THE RELIEF REQUESTED

### A.  Sale Pursuant to 11 U.S.C. § 363(b).

14. Section 363(b)(1) authorizes a debtor in possession to sell property of the estate other than in the ordinary course of business, after notice and a hearing. *See* 11 U.S.C. §§ 363(b)(1), 1303.

15. Courts authorize sales under § 363(b) when the debtor demonstrates a sound business justification. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983). Here, the sale (a) monetizes the estate's most significant asset above the aggregate Liens; (b) eliminates carrying costs and the risk of further accruing default interest, late fees, and HOA assessments; (c) avoids foreclosure; and (d) allows the Debtor to access her statutory homestead exemption and effectuate her chapter 13 plan.

### B.  Sale Free and Clear of Liens Pursuant to 11 U.S.C. § 363(f).

16. Section 363(f) authorizes a sale free and clear of any interest if any one of five conditions is satisfied:

(1) applicable nonbankruptcy law permits sale free and clear;

(2) such entity consents;

(3) such interest is a lien and the price exceeds the aggregate value of all liens;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled to accept a money satisfaction.

11 U.S.C. § 363(f). The requirements are disjunctive.

**17.** Here, the sale satisfies at least § 363(f)(3), and as to NBH Bank also § 363(f)(2):

**(a)** Section 363(f)(3) is satisfied because the Purchase Price of $586,000.00 exceeds the aggregate value of all Liens. Even using the highest-possible balances in Paragraph 5—NBH at $415,000.00, Tri State at $45,000.00, and the HRCA assessment lien (estimated at a modest amount per Exhibit B)—the aggregate falls well below the Purchase Price.

**(b)** Section 363(f)(2) is independently satisfied as to NBH Bank. Through counsel (Douglas W. Brown, Esq.), NBH Bank has communicated in writing that it does not object to a sale provided NBH receives payment in full at Closing. Email correspondence from Douglas W. Brown to undersigned counsel dated April 28, 2026: "If we are going to get paid in full in that time frame, we would not be objecting. I will wait for your Motion to ensure my understanding is correct."

**(c)** Section 363(f)(5) is independently satisfied as to all Lienholders because each could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its lien upon payment in full.

## C.  Buyer's Good Faith — 11 U.S.C. § 363(m).

**18.** The Debtor requests that the Order include a finding that the Buyer is a good faith purchaser within the meaning of § 363(m). The sale is arm's-length, the parties are unaffiliated, no commissions are being paid, and the Purchase Price is fair and reasonable.

## VI.  NOTICE

**19.** Notice of this Motion will be provided to: (a) the chapter 13 trustee Adam M. Goodman and his staff attorney Michael Edlen, Esq.; (b) the U.S. Trustee for Region 19; (c) NBH Bank c/o Douglas W. Brown, Esq.; (d) Tri State Mortgage; (e) HRCA c/o Michael C. Lamb, Esq.; (f) the Buyer; (g) Equity Title of Colorado, as Earnest Money Holder; (h) all creditors and parties in interest entitled to notice under Fed. R. Bankr. P. 2002(a)(2); and (i) such other parties as required by the Local Bankruptcy Rules.

## VII.  RELIEF REQUESTED

20. **WHEREFORE**, the Debtor respectfully requests that this Court enter an Order, substantially in the form attached hereto as Exhibit D:

   **(a)** Granting this Motion;

   **(b)** Authorizing the Debtor to sell the Property to the Buyer in accordance with the CBS and this Motion with authorization to extend the closing date and other deadlines;

   **(c)** Authorizing the sale free and clear of all Liens pursuant to 11 U.S.C. § 363(f), with such Liens to attach to proceeds and be paid in the order in Paragraph 12 above;

   **(d)** Finding that the Buyer is a good faith purchaser entitled to § 363(m) protections;

   **(e)** Authorizing all necessary actions and documents to effectuate the sale and disburse net proceeds;

   **(f)** Waiving the 14-day stay under Fed. R. Bankr. P. 6004(h); and

   **(g)** Granting such other and further relief as the Court deems just and proper.

Respectfully submitted this 20th day of May, 2026.

**RIGGI LAW FIRM**
**By: /s/ David A. Riggi**
David A. Riggi
4610 S. Ulster Street, Suite 150, Denver, CO 80237-4326
riggilaw@gmail.com  /  (702) 463-7777
Counsel for the Debtor

## EXHIBIT LIST

Exhibit A: Contract to Buy and Sell Real Estate (Residential)(Colorado Foreclosure Protection Act), dated April 22, 2026

Exhibit B: Estimated Seller's Closing Statement, prepared by Equity Title of Colorado, dated May 8, 2026 (Escrow No. 201456-LKWD-CH)

Exhibit C: ALTA Commitment for Title Insurance, Equity Title of Colorado, File No. 201456

Exhibit D: Proposed Order Granting Debtor's Motion for Authority to Sell Real Property Free and Clear of Liens

# Exhibit "A"



**LoKation Real Estate**
Geoffrey Willcox

---

*This form is the property of the Colorado Real Estate Commission. The printed portions of this form, except differentiated additions, have been approved and promulgated by the Commission for public use. All users are prohibited from modifying this form except as permitted by the Rules Regarding Real Estate Brokers, 4 CCR 725-1-7.2*

**CBSF1 Contract to Buy and Sell Real Estate (Residential)(Colorado Foreclosure Protection Act)**
**Adoption Date: August 5, 2025**
**Mandatory Use Date: January 1, 2026**

---

**THIS FORM HAS IMPORTANT LEGAL CONSEQUENCES AND THE PARTIES SHOULD CONSULT LEGAL AND TAX OR OTHER COUNSEL BEFORE SIGNING.**

# CONTRACT TO BUY AND SELL REAL ESTATE
# (RESIDENTIAL)
# (Colorado Foreclosure Protection Act)

Date: _**4/22/2026**_

---

**AGREEMENT**

---

**1.    AGREEMENT.** Buyer agrees to buy and Seller agrees to sell the Property described below on the terms and conditions set forth in this contract (Contract).

**2.    PARTIES AND PROPERTY.**

**2.1.    Buyer.** _**Wise Investments Limited**_ (Buyer) will take title to the Property described below as ☐ **Joint Tenants** ☐ **Tenants In Common** ☒ **Other** _**Severalty**_.

**2.2.    No Assignability.** This Contract **IS NOT** assignable by Buyer unless otherwise specified in **Additional Provisions**.

**2.3.    Seller.** _**Kia Lamicq**_ (Seller) is the current owner of the Property described below.

**2.4.    Property.** The Property is the following legally described real estate in the County of _**Douglas**_, Colorado (insert legal description):

_**LOT 14 HIGHLANDS RANCH #97E 0.19 AM/L**_

known as: _**704 Huntington Drive, Highlands Ranch, CO 80104**_

together with the interests, easements, rights, benefits, improvements and attached fixtures appurtenant thereto and all interest of Seller in vacated streets and alleys adjacent thereto, except as herein excluded (Property).

**2.5.    Inclusions.** The Purchase Price includes the following items (Inclusions):

**2.5.1.    Inclusions – Attached.** If attached to the Property on the date of this Contract, the following items are included unless excluded under **Exclusions**: lighting, heating, plumbing, ventilating and air conditioning units, TV antennas, inside telephone, network and coaxial (cable) wiring and connecting blocks/jacks, plants, mirrors, floor coverings, intercom systems, built-in kitchen appliances, sprinkler systems and controls, built-in vacuum systems (including accessories) and garage door openers (including _**any**_ remote controls). If checked, the following are owned by the Seller and included: ☐ **Solar Panels** ☐ **Water Softeners** ☐ **Security Systems** ☐ **Satellite Systems** (including satellite dishes). Leased items should be listed under § 2.5.8. (Leased Items). If any additional items are attached to the Property after the date of this Contract, such additional items are also included in the Purchase Price.

**2.5.2.** **Inclusions – Additional.** If on the Property on the date of this Contract, whether attached or not, the following items are included unless excluded under **Exclusions**: storm windows, storm doors, window and porch shades, awnings, blinds, screens, window coverings and treatments, curtain rods, drapery rods, fireplace inserts, fireplace screens, fireplace grates, heating stoves, storage sheds, carbon monoxide alarms, smoke/fire detectors and all keys.

**2.5.3.** **Other Inclusions.** The following items, whether fixtures or personal property, are also included in the Purchase Price:

*kitchen appliances*

☐ If the box is checked, Buyer and Seller have concurrently entered into a separate agreement for additional personal property outside of this Contract.

**2.5.4.** **Home Warranty.** Seller and Buyer are aware of the existence of pre-owned home warranty programs that may be purchased and may cover the repair or replacement of certain Inclusions.

**2.5.5.** **Encumbered Inclusions-Encumbered.** Any Inclusions owned by Seller (e.g., owned solar panels) must be conveyed at Closing by Seller free and clear of all taxes (except personal property and general real estate taxes for the year of Closing), liens and encumbrances, except:

*n/a*

Buyer ☐ **Will** ☒ **Will Not** assume the debt and obligations on the Encumbered Inclusions subject to Buyer's review under §10.6. (Encumbered Inclusion Documents) and Buyer's receipt of written approval by such lessor before Closing. If Buyer does not receive such approval this Contract terminates.

**2.5.6.** **Personal Property Conveyance.** Conveyance of all personal property will be by bill of sale or other applicable legal instrument.

**2.5.7.** **Parking and Storage Facilities.** The use or ownership of the following parking facilities: *attached garage*; and the use or ownership of the following storage facilities:

*any that exist*

Note to Buyer: If exact rights to the parking and storage facilities is a concern to Buyer, Buyer should investigate.

**2.5.8.** **Leased Items.** The following personal property is currently leased to Seller which will be transferred to Buyer at Closing (Leased Items):

*n/a*

Buyer ☐ **Will** ☒ **Will Not** assume Seller's debt and obligations under such leases for the Leased Items subject to Buyer's review under §10.6. (Leased Items Documents) and Buyer's receipt of written approval by such lessor before Closing. If Buyer does not receive such approval this Contract terminates.

☐ **2.5.9.** **Solar Power Plan.** If the box is checked, Seller has entered into a solar power purchase agreement, regardless of the name or title, to authorize a third party to operate and maintain a photovoltaic system on the Property and provide electricity (Solar Power Plan) that will remain in effect after Closing. Buyer ☐ **Will** ☐ **Will Not** assume Seller's obligations under such Solar Power Plan subject to Buyer's review under §10.6. (Solar Power Plan) and Buyer's receipt of written approval by the third party before Closing. If Buyer does not receive such approval this Contract terminates.

**2.6.** **Exclusions.** The following items are excluded (Exclusions):

*owner's personal property*

**2.7.** **Water Rights/Well Rights.**

☐ **2.7.1.** **Deeded Water Rights.** The following legally described water rights:

*n/a*

Any deeded water rights will be conveyed by a good and sufficient *n/a* deed at Closing.

☐ **2.7.2.** **Other Rights Relating to Water.** The following rights relating to water not included in §§ 2.7.1., 2.7.3. and 2.7.4., will be transferred to Buyer at Closing:

*n/a*

☐ **2.7.3.** **Well Rights.** Seller agrees to supply required information to Buyer about the well. Buyer understands that if the well to be transferred is a "Small Capacity Well" or a "Domestic Exempt Water Well" used for ordinary household purposes, Buyer must, prior to or at Closing, complete a Change in Ownership form for the well. If an existing well has not been registered with the Colorado Division of Water Resources in the Department of Natural Resources (Division), Buyer must complete a registration of existing well form for the well and pay the cost of registration. If no person will be providing a closing service in connection with the transaction, Buyer must file the form with the Division within sixty days after Closing. The Well Permit # is *n/a*.

☐       **2.7.4.     Water Stock.** The water stock to be transferred at Closing are as follows: *n/a*

**2.7.5.     Conveyance.** If Buyer is to receive any rights to water pursuant to § 2.7.2. (Other Rights Relating to Water), § 2.7.3. (Well Rights), or § 2.7.4. (Water Stock Certificates), Seller agrees to convey such rights to Buyer by executing the applicable legal instrument at Closing.

**2.7.6.     Water Rights Review.** Buyer has a Right to Terminate if examination of the Water Rights is unsatisfactory to Buyer on or before the **Water Rights Examination Deadline**.

## 3.    DATES, DEADLINES AND APPLICABILITY.

### 3.1.    Dates and Deadlines.

| Item No. | Reference | Event | Date or Deadline | |
|---|---|---|---|---|
| 1 | § 3 | Time of Day Deadline | *4:00 PM* | |
| 2 | § 4 | Alternative Earnest Money Deadline | *4/30/2026* | Thursday |
| | | **Title** | | |
| 3 | § 8 | Record Title Deadline (and Tax Certificate) | *4/30/2026* | Thursday |
| 4 | § 8 | Record Title Objection Deadline | *4/30/2026* | Thursday |
| 5 | § 8 | Off-Record Title Deadline | *5/1/2026* | Friday |
| 6 | § 8 | Off-Record Title Objection Deadline | *5/1/2026* | Friday |
| 7 | § 8 | Title Resolution Deadline | *5/5/2026* | Tuesday |
| 8 | § 8 | Third Party Right to Purchase/Approve Deadline | *n/a* | |
| | | **Owners' Association** | | |
| 9 | § 7 | Association Documents Deadline | *5/11/2026* | Monday |
| 10 | § 7 | Association Documents Termination Deadline | *5/13/2026* | Wednesday |
| | | **Seller's Disclosures** | | |
| 11 | § 10 | Seller's Property Disclosure Deadline | *4/28/2026* | Tuesday |
| 12 | § 10 | Lead-Based Paint Disclosure Deadline | *n/a* | |
| | | **Loan and Credit** | | |
| 13 | § 5 | New Loan Application Deadline | *n/a* | |
| 14 | § 5 | New Loan Terms Deadline | *n/a* | |
| 15 | § 5 | New Loan Availability Deadline | *n/a* | |
| 16 | § 5 | Buyer's Credit Information Deadline | *n/a* | |
| 17 | § 5 | Disapproval of Buyer's Credit Information Deadline | *n/a* | |
| 18 | § 5 | Existing Loan Deadline | *n/a* | |
| 19 | § 5 | Existing Loan Termination Deadline | *n/a* | |
| 20 | § 5 | Loan Transfer Approval Deadline | *n/a* | |
| 21 | § 4 | Seller or Private Financing Deadline | *n/a* | |
| | | **Appraisal** | | |
| 22 | § 6 | Appraisal Deadline | *n/a* | |
| 23 | § 6 | Appraisal Objection Deadline | *n/a* | |
| 24 | § 6 | Appraisal Resolution Deadline | *n/a* | |
| | | **Survey** | | |
| 25 | § 9 | New ILC or New Survey Deadline | *n/a* | |
| 26 | § 9 | New ILC or New Survey Objection Deadline | *n/a* | |
| 27 | § 9 | New ILC or New Survey Resolution Deadline | *n/a* | |

| | | **Inspection and Due diligence** | |
|---|---|---|---|
| 28 | § 2 | Water Rights Examination Deadline | *n/a* |
| 29 | § 8 | Mineral Rights Examination Deadline | *n/a* |
| 30 | § 10 | Inspection Termination Deadline | *5/21/2026* Thursday |
| 31 | § 10 | Inspection Objection Deadline | *n/a* |
| 32 | § 10 | Inspection Resolution Deadline | *n/a* |
| 33 | § 10 | Property Insurance Termination Deadline | *n/a* |
| 34 | § 10 | Due Diligence Documents Delivery Deadline | *n/a* |
| 35 | § 10 | Due Diligence Documents Objection Deadline | *n/a* |
| 36 | § 10 | Due Diligence Documents Resolution Deadline | *n/a* |
| 37 | § 10 | Conditional Sale Deadline | *n/a* |
| 38 | § 10 | Lead-Based Paint Termination Deadline | *n/a* |
| | | **Closing and Possession** | |
| 39 | § 12 | Closing Date | *5/28/2026* Thursday |
| 40 | § 17 | Possession Date | *6/18/2026 10:00 AM* Thursday |
| 41 | § 17 | Possession Time | |
| 42 | § 27 | **Acceptance Deadline Date** | |
| 43 | § 27 | **Acceptance Deadline Time** | |
| 44 | | | |
| 45 | | | |

**Note**: If **FHA** or **VA** loan boxes are checked in § 4.5.3. (Loan Limitations), the **Appraisal** deadlines **DO NOT** apply to **FHA** insured or **VA** guaranteed loans.

3.2. **Applicability of Terms.** If any deadline in § 3.1. (Dates and Deadlines) is left blank or completed with "N/A", or the word "Deleted," such deadline is not applicable and the corresponding provision containing the deadline is deleted. Any box checked in this Contract means the corresponding provision applies. If no box is checked in a provision that contains a selection of "None", such provision means that "None" applies.

The abbreviation "MEC" (mutual execution of this Contract) means the date upon which both parties have signed this Contract. The abbreviation "N/A" as used in this Contract means not applicable.

3.3. **Day; Computation of Period of Days; Deadlines.**

3.3.1. **Day.** As used in this Contract, the term "day" means the entire day ending at 11:59 p.m., United States Mountain Time (Standard or Daylight Savings, as applicable). Except however, if a **Time of Day Deadline** is specified in § 3.1. (Dates and Deadlines), all Objection Deadlines, Resolution Deadlines, Examination Deadlines and Termination Deadlines will end on the specified deadline date at the time of day specified in the **Time of Day Deadline**, United States Mountain Time. If **Time of Day Deadline** is left blank or "N/A" the deadlines will expire at 11:59 p.m., United States Mountain Time.

3.3.2. **Computation of Period of Days.** In computing a period of days (e.g., three days after MEC), when the ending date is not specified, the first day is excluded and the last day is included.

3.3.3. **Deadlines.** If any deadline falls on a Saturday, Sunday or federal or Colorado state holiday (Holiday), such deadline ☐ **Will** ☒ **Will Not** be extended to the next day that is not a Saturday, Sunday or Holiday. Should neither box be checked, the deadline will not be extended.

4. **PURCHASE PRICE AND TERMS.**

4.1. **Price and Terms.** The Purchase Price set forth below is payable in U.S. Dollars by Buyer as follows:

| Item No. | Reference | Item | Amount | Amount |
|---|---|---|---|---|
| 1 | § 4.1. | Purchase Price | $ 586,000.00 | |

| 2 | § 4.3. | Earnest Money | | | $ | 3,500.00 |
|---|---|---|---|---|---|---|
| 3 | § 4.5. | New Loan | | | $ | 0.00 |
| 4 | § 4.6. | Assumption Balance | | | $ | 0.00 |
| 5 | § 4.7. | Private Financing | | | $ | 0.00 |
| 6 | § 4.7. | Seller Financing | | | $ | 0.00 |
| 7 | *n/a* | | | | $ | |
| 8 | *n/a* | | | | $ | |
| 9 | § 4.4. | Cash at Closing | | | $ | 582,500.00 |
| 10 | | **Total** | $ | 586,000.00 | $ | 586,000.00 |

**4.2.   Seller Concession.** At Closing, Seller will credit to Buyer $*n/a* (Seller Concession). The Seller Concession may be used for any Buyer fee, cost, charge or expenditure to the extent the amount is allowed by the Buyer's lender and is included in the Closing Statement or Closing Disclosure at Closing. Examples of allowable items to be paid for by the Seller Concession include, but are not limited to: Buyer's closing costs, loan discount points, loan origination fees, prepaid items and any other fee, cost, charge, expense or expenditure. Seller Concession is in addition to any sum Seller has agreed to pay or credit Buyer elsewhere in this Contract.

**4.3.   Earnest Money.** The Earnest Money set forth in this Section, in the form of a ***good funds***, will be payable to and held by ***equity title of colorado*** (Earnest Money Holder), in its trust account, on behalf of both Seller and Buyer. The Earnest Money must be tendered, by Buyer, with this Contract unless the parties mutually agree to an **Alternative Earnest Money Deadline** for its payment. The parties authorize delivery of the Earnest Money to the company conducting the Closing (Closing Company), if any, at or before Closing. In the event Earnest Money Holder has agreed to have interest on Earnest Money transferred to a fund established for the purpose of providing affordable housing to Colorado residents, Seller and Buyer acknowledge and agree that any interest accruing on the Earnest Money deposited with the Earnest Money Holder in this transaction will be transferred to such fund.

**4.3.1.   Alternative Earnest Money Deadline.** The deadline for delivering the Earnest Money, if other than at the time of tender of this Contract, is as set forth as the **Alternative Earnest Money Deadline**.

**4.3.2.   Disposition of Earnest Money.** If Buyer has a Right to Terminate and timely terminates, Buyer is entitled to the return of Earnest Money as provided in this Contract. If this Contract is terminated as set forth in § 24 and, except as provided in § 23 (Earnest Money Dispute), if the Earnest Money has not already been returned following receipt of a Notice to Terminate, Seller agrees to execute and deliver to Buyer or Broker working with Buyer, written mutual instructions (e.g., Earnest Money Release form), within three days of Seller's receipt of such form. If Seller is entitled to the Earnest Money, and, except as provided in § 23 (Earnest Money Dispute), if the Earnest Money has not already been paid to Seller, following receipt of an Earnest Money Release form, Buyer agrees to execute and return to Seller or Broker working with Seller, written mutual instructions (e.g., Earnest Money Release form), within three days of Buyer's receipt.

**4.3.2.1.   Seller Failure to Timely Return Earnest Money.** If Seller fails to timely execute and return the Earnest Money Release Form, or other written mutual instructions, Seller is in default and liable to Buyer as set forth in **"If Seller is in Default", § 20.2. and § 21,** unless Seller is entitled to the Earnest Money due to a Buyer default.

**4.3.2.2.   Buyer Failure to Timely Release Earnest Money.** If Buyer fails to timely execute and return the Earnest Money Release Form, or other written mutual instructions, Buyer is in default and liable to Seller as set forth in "**If Buyer is in Default, § 20.1. and § 21**, unless Buyer is entitled to the Earnest Money due to a Seller Default.

**4.4.   Form of Funds; Time of Payment; Available Funds.**

**4.4.1.   Good Funds.** All amounts payable by the parties at Closing, including any loan proceeds, Cash at Closing and closing costs, must be in funds that comply with all applicable Colorado laws, including wire transfers, certified check, teller's check, cashier's check, and real-time or instant payment (Good Funds).

**4.4.2.   Time of Payment.** All funds, including the Purchase Price to be paid by Buyer, must be paid before or at Closing or as otherwise agreed in writing between the parties to allow disbursement by Closing Company at Closing **OR SUCH NONPAYING PARTY WILL BE IN DEFAULT**.

**4.4.3.     Available Funds.** Buyer represents that Buyer, as of the date of this Contract, ☒ **Does** ☐ **Does Not** have funds that are immediately verifiable and available in an amount not less than the amount stated as Cash at Closing in § 4.1.

    **4.5.     New Loan.** (Omitted as inapplicable)

    **4.6.     Assumption.** (Omitted as inapplicable)

    **4.7.     Seller or Private Financing.** (Omitted as inapplicable)

<div style="border:1px solid black; text-align:center;">

## TRANSACTION PROVISIONS

</div>

**5.     FINANCING CONDITIONS AND OBLIGATIONS.**
(Omitted as inapplicable)

    **5.3.     Credit Information.** (Omitted as inapplicable)

    **5.4.     Existing Loan Review.** (Omitted as inapplicable)

    **5.5.     Buyer Representation of Principal Residence.** Buyer represents that Buyer will **NOT** occupy the Property as Buyer's principal residence.

**6.     APPRAISAL PROVISIONS.**

    **6.1.     Appraisal Definition.** An "Appraisal" is an opinion of value prepared by a licensed or certified appraiser, engaged on behalf of Buyer or Buyer's lender, to determine the Property's market value (Appraised Value). The Appraisal may also set forth certain lender requirements, replacements, removals or repairs necessary on or to the Property as a condition for the Property to be valued at the Appraised Value.

    **6.2.     Appraised Value.** The applicable appraisal provision set forth below applies to the respective loan type set forth in § 4.5.3., or if a cash transaction (i.e., no financing), § 6.2.1. applies.

        **6.2.1.     Conventional/Other.** Buyer has the right to obtain an Appraisal. If the Appraised Value is less than the Purchase Price, or if the Appraisal is not received by Buyer on or before **Appraisal Deadline** Buyer may, on or before **Appraisal Objection Deadline**:

            **6.2.1.1.     Notice to Terminate.** Notify Seller in writing, pursuant to § 24.1., that this Contract is terminated; or

            **6.2.1.2.     Appraisal Objection.** Deliver to Seller a written objection accompanied by either a copy of the Appraisal or written notice from lender that confirms the Appraised Value is less than the Purchase Price (Lender Verification).

            **6.2.1.3.     Appraisal Resolution.** If an Appraisal Objection is received by Seller, on or before **Appraisal Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Appraisal Resolution Deadline**, this Contract will terminate on the **Appraisal Resolution Deadline**, unless Seller receives Buyer's written withdrawal of the Appraisal Objection before such termination, (i.e., on or before expiration of **Appraisal Resolution Deadline**).

        **6.2.2.     FHA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer) shall not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of Earnest Money deposits or otherwise unless the purchaser (Buyer) has been given, in accordance with HUD/FHA or VA requirements, a written statement issued by the Federal Housing Commissioner, Department of Veterans Affairs, or a Direct Endorsement lender, setting forth the appraised value of the Property of not less than $_n/a_. The purchaser (Buyer) shall have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. The purchaser (Buyer) should satisfy himself/herself/themselves that the price and condition of the Property are acceptable.

        **6.2.3.     VA.** It is expressly agreed that, notwithstanding any other provisions of this Contract, the purchaser (Buyer) shall not incur any penalty by forfeiture of Earnest Money or otherwise or be obligated to complete the purchase of the Property described herein, if the Contract Purchase Price or cost exceeds the reasonable value of the Property established by the Department of Veterans Affairs. The purchaser (Buyer) shall, however, have the privilege and option of proceeding with the consummation of this Contract without regard to the amount of the reasonable value established by the Department of Veterans Affairs.

**6.3.** **Lender Property Requirements.** If the lender imposes any written requirements, replacements, removals or repairs, including any specified in the Appraisal (Lender Property Requirements) to be made to the Property (e.g., roof repair, repainting), beyond those matters already agreed to by Seller in this Contract, this Contract terminates on the earlier of three days following Seller's receipt of the Lender Property Requirements, or Closing, unless prior to termination: (1) the parties enter into a written agreement to satisfy the Lender Property Requirements; (2) the Lender Property Requirements have been completed; or (3) the satisfaction of the Lender Property Requirements is waived in writing by Buyer.

**6.4.** **Cost of Appraisal.** Cost of the Appraisal to be obtained after the date of this Contract must be timely paid by ☐ **Buyer** ☐ **Seller.** The cost of the Appraisal may include any and all fees paid to the appraiser, appraisal management company, lender's agent or all three.

**7.** **OWNERS' ASSOCIATIONS.** This Section is applicable if the Property is located within one or more Common Interest Communities and subject to one or more declarations (Association).

**7.1.** **Common Interest Community Disclosure. THE PROPERTY IS LOCATED WITHIN A COMMON INTEREST COMMUNITY AND IS SUBJECT TO THE DECLARATION FOR THE COMMUNITY. THE OWNER OF THE PROPERTY WILL BE REQUIRED TO BE A MEMBER OF THE OWNERS' ASSOCIATION FOR THE COMMUNITY AND WILL BE SUBJECT TO THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION. THE DECLARATION, BYLAWS AND RULES AND REGULATIONS WILL IMPOSE FINANCIAL OBLIGATIONS UPON THE OWNER OF THE PROPERTY, INCLUDING AN OBLIGATION TO PAY ASSESSMENTS OF THE ASSOCIATION. IF THE OWNER DOES NOT PAY THESE ASSESSMENTS, THE ASSOCIATION COULD PLACE A LIEN ON THE PROPERTY AND POSSIBLY SELL IT TO PAY THE DEBT. THE DECLARATION, BYLAWS AND RULES AND REGULATIONS OF THE COMMUNITY MAY PROHIBIT THE OWNER FROM MAKING CHANGES TO THE PROPERTY WITHOUT AN ARCHITECTURAL REVIEW BY THE ASSOCIATION (OR A COMMITTEE OF THE ASSOCIATION) AND THE APPROVAL OF THE ASSOCIATION. PURCHASERS OF PROPERTY WITHIN THE COMMON INTEREST COMMUNITY SHOULD INVESTIGATE THE FINANCIAL OBLIGATIONS OF MEMBERS OF THE ASSOCIATION. PURCHASERS SHOULD CAREFULLY READ THE DECLARATION FOR THE COMMUNITY AND THE BYLAWS AND RULES AND REGULATIONS OF THE ASSOCIATION.**

**7.2.** **Association Documents to Buyer.** Seller is obligated to provide to Buyer the Association Documents (defined below), at Seller's expense, on or before **Association Documents Deadline**. Seller authorizes the Association to provide the Association Documents to Buyer, at Seller's expense. Seller's obligation to provide the Association Documents is fulfilled upon Buyer's receipt of the Association Documents, regardless of who provides such documents.

**7.3.** **Association Documents.** Association documents (Association Documents) consist of the following:

**7.3.1.** All Association declarations, articles of incorporation, bylaws, articles of organization, operating agreements, rules and regulations, party wall agreements and the Association's responsible governance policies adopted under § 38-33.3-209.5, C.R.S.;

**7.3.2.** Minutes of: (1) the annual owners' or members' meeting and (2) any executive boards' or managers' meetings; such minutes include those provided under the most current annual disclosure required under § 38-33.3-209.4, C.R.S. (Annual Disclosure) and minutes of meetings, if any, subsequent to the minutes disclosed in the Annual Disclosure. If none of the preceding minutes exist, then the most recent minutes, if any (§§ 7.3.1. and 7.3.2., collectively, Governing Documents); and

**7.3.3.** List of all Association insurance policies as provided in the Association's last Annual Disclosure, including, but not limited to, property, general liability, association director and officer professional liability and fidelity policies. The list must include the company names, policy limits, policy deductibles, additional named insureds and expiration dates of the policies listed (Association Insurance Documents);

**7.3.4.** A list by unit type of the Association's assessments, including both regular and special assessments as disclosed in the Association's last Annual Disclosure;

**7.3.5.** The Association's most recent financial documents which consist of: (1) the Association's operating budget for the current fiscal year, (2) the Association's most recent annual financial statements, including any amounts held in reserve for the fiscal year immediately preceding the Association's last Annual Disclosure, (3) the results of the Association's most recent available financial audit or review, (4) list of the fees and charges (regardless of name or title of such fees or charges) that the Association's community association manager or Association will charge in connection with the Closing including, but not limited to, any

fee incident to the issuance of the Association's statement of assessments (Status Letter), any rush or update fee charged for the Status Letter, any record change fee or ownership record transfer fees (Record Change Fee), fees to access documents, (5) list of all assessments required to be paid in advance, reserves or working capital due at Closing and (6) reserve study, if any (§§ 7.3.4. and 7.3.5., collectively, Financial Documents);

**7.3.6.** Any written notice from the Association to Seller of a "construction defect action" under § 38-33.3-303.5, C.R.S. within the past six months and the result of whether the Association approved or disapproved such action (Construction Defect Documents). Nothing in this Section limits the Seller's obligation to disclose adverse material facts as required under § 10.2. (Disclosure of Adverse Material Facts; Subsequent Disclosure; Present Condition) including any problems or defects in the common elements or limited common elements of the Association property.

**7.4.   Conditional on Buyer's Review.** Buyer has the right to review the Association Documents. Buyer has the Right to Terminate under § 24.1., on or before **Association Documents Termination Deadline**, based on any unsatisfactory provision in any of the Association Documents, in Buyer's sole subjective discretion. Should Buyer receive the Association Documents after **Association Documents Deadline**, Buyer, at Buyer's option, has the Right to Terminate under § 24.1. by Buyer's Notice to Terminate received by Seller on or before ten days after Buyer's receipt of the Association Documents. If Buyer does not receive the Association Documents, or if Buyer's Notice to Terminate would otherwise be required to be received by Seller after **Closing Date**, Buyer's Notice to Terminate must be received by Seller on or before Closing. If Seller does not receive Buyer's Notice to Terminate within such time, Buyer accepts the provisions of the Association Documents as satisfactory and Buyer waives any Right to Terminate under this provision, notwithstanding the provisions of § 8.6. (Third Party Right to Purchase/Approve).

## 8.   TITLE INSURANCE, RECORD TITLE AND OFF-RECORD TITLE.

**8.1.   Evidence of Record Title.**

☐      **8.1.1.      Seller Selects Title Insurance Company.** If this box is checked, Seller will select the title insurance company to furnish the owner's title insurance policy at Seller's expense. On or before **Record Title Deadline**, Seller must furnish to Buyer, a current commitment for an owner's title insurance policy (Title Commitment) in an amount equal to the Purchase Price, or if this box is checked, ☐ an **Abstract of Title** certified to a current date. Seller will cause the title insurance policy to be issued and delivered to Buyer as soon as practicable at or after Closing.

☒      **8.1.2.      Buyer Selects Title Insurance Company.** If this box is checked, Buyer will select the title insurance company to furnish the owner's title insurance policy at Buyer's expense. On or before **Record Title Deadline**, Buyer must furnish to Seller, a current commitment for owner's title insurance policy (Title Commitment), in an amount equal to the Purchase Price.
If neither box in § 8.1.1. or § 8.1.2. is checked, § 8.1.1. applies.

**8.1.3.   Owner's Extended Coverage (OEC).** The Title Commitment ☒ **Will** ☐ **Will Not** contain Owner's Extended Coverage (OEC). If the Title Commitment is to contain OEC, it will commit to delete or insure over the standard exceptions which relate to: (1) parties in possession, (2) unrecorded easements, (3) survey matters, (4) unrecorded mechanics' liens, (5) gap period (period between the effective date and time of commitment to the date and time the deed is recorded) and (6) unpaid taxes, assessments and unredeemed tax sales prior to the year of Closing. Any additional premium expense to obtain OEC will be paid by
☒ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **Other** .
Regardless of whether the Contract requires OEC, the Title Insurance Commitment may not provide OEC or delete or insure over any or all of the standard exceptions for OEC. The Title Insurance Company may require a New Survey or New ILC, defined below, among other requirements for OEC. If the Title Insurance Commitment is not satisfactory to Buyer, Buyer has a right to object under § 8.7. (Right to Object to Title, Resolution).

**8.1.4.   Title Documents.** Title Documents consist of the following: (1) copies of any plats, declarations, covenants, conditions and restrictions burdening the Property and (2) copies of any other documents (or, if illegible, summaries of such documents) listed in the schedule of exceptions (Exceptions) in the Title Commitment furnished to Buyer (collectively, Title Documents).

**8.1.5.   Copies of Title Documents.** Buyer must receive, on or before **Record Title Deadline**, copies of all Title Documents. This requirement pertains only to documents as shown of record in the office of the clerk and recorder in the county where the Property is located. The cost of furnishing copies of the

documents required in this Section will be at the expense of the party or parties obligated to pay for the owner's title insurance policy.

       **8.1.6.**    **Existing Abstracts of Title.** Seller must deliver to Buyer copies of any abstracts of title covering all or any portion of the Property (Abstract of Title) in Seller's possession on or before **Record Title Deadline**.

     **8.2.**    **Record Title.** Buyer has the right to review and object to the Abstract of Title or Title Commitment and any of the Title Documents as set forth in § 8.7. (Right to Object to Title, Resolution) on or before **Record Title Objection Deadline**. Buyer's objection may be based on any unsatisfactory form or content of Title Commitment or Abstract of Title, notwithstanding § 13, or any other unsatisfactory title condition, in Buyer's sole subjective discretion. If the Abstract of Title, Title Commitment or Title Documents are not received by Buyer on or before the **Record Title Deadline**, or if there is an endorsement to the Title Commitment that adds a new Exception to title, a copy of the new Exception to title and the modified Title Commitment will be delivered to Buyer. Buyer has until the earlier of Closing or ten days after receipt of such documents by Buyer to review and object to: (1) any required Title Document not timely received by Buyer, (2) any change to the Abstract of Title, Title Commitment or Title Documents, or (3) any endorsement to the Title Commitment. If Seller receives Buyer's Notice to Terminate or Notice of Title Objection, pursuant to this § 8.2. (Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.7. (Right to Object to Title, Resolution). If Seller has fulfilled all Seller's obligations, if any, to deliver to Buyer all documents required by § 8.1. (Evidence of Record Title) and Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer accepts the condition of title as disclosed by the Abstract of Title, Title Commitment and Title Documents as satisfactory.

     **8.3.**    **Off-Record Title.** Seller must deliver to Buyer, on or before **Off-Record Title Deadline**, true copies of all existing surveys in Seller's possession pertaining to the Property and must disclose to Buyer all easements, liens (including, without limitation, governmental improvements approved, but not yet installed) or other title matters not shown by public records, of which Seller has actual knowledge (Off-Record Matters). This Section excludes any **New ILC** or **New Survey** governed under § 9 (New ILC, New Survey). Buyer has the right to inspect the Property to investigate if any third party has any right in the Property not shown by public records (e.g., unrecorded easement, boundary line discrepancy or water rights). Buyer's Notice to Terminate or Notice of Title Objection of any unsatisfactory condition (whether disclosed by Seller or revealed by such inspection, notwithstanding § 8.2. (Record Title) and § 13 (Transfer of Title)), in Buyer's sole subjective discretion, must be received by Seller on or before **Off-Record Title Objection Deadline**. If an Off-Record Matter is received by Buyer after the **Off-Record Title Deadline**, Buyer has until the earlier of Closing or ten days after receipt by Buyer to review and object to such Off-Record Matter. If Seller receives Buyer's Notice to Terminate or Notice of Title Objection pursuant to this § 8.3. (Off-Record Title), any title objection by Buyer is governed by the provisions set forth in § 8.7. (Right to Object to Title, Resolution). If Seller does not receive Buyer's Notice to Terminate or Notice of Title Objection by the applicable deadline specified above, Buyer accepts title subject to such Off-Record Matters and rights, if any, of third parties not shown by public records of which Buyer has actual knowledge.

     **8.4.**    **Special Taxing and Metropolitan Districts. ACTIONS BY A SPECIAL TAXING OR METROPOLITAN DISTRICT PURSUANT TO ITS AUTHORITY TO ISSUE DEBT, IMPOSE MILL LEVIES, AND IMPOSE FEES, RATES, TOLLS, PENALTIES, OR OTHER CHARGES MAY INCREASE COSTS TO RESIDENTS LIVING IN THE SPECIAL TAXING OR METROPOLITAN DISTRICT. SPECIAL TAXING AND METROPOLITAN DISTRICTS MAY BE SUBJECT TO GENERAL OBLIGATION INDEBTEDNESS THAT IS PAID BY REVENUES PRODUCED FROM ANNUAL TAX LEVIES ON THE TAXABLE PROPERTY WITHIN SUCH DISTRICTS. PROPERTY OWNERS IN SUCH DISTRICTS MAY BE PLACED AT RISK FOR INCREASED MILL LEVIES AND TAX TO SUPPORT THE SERVICING OF SUCH DEBT WHERE CIRCUMSTANCES ARISE RESULTING IN THE INABILITY OF SUCH A DISTRICT TO DISCHARGE SUCH INDEBTEDNESS WITHOUT SUCH AN INCREASE IN MILL LEVIES. BUYERS SHOULD INVESTIGATE THE SPECIAL TAXING OR METROPOLITAN DISTRICTS IN WHICH THE PROPERTY IS LOCATED BY CONTACTING THE COUNTY TREASURER, BY REVIEWING THE CERTIFICATE OF TAXES DUE FOR THE PROPERTY AND BY OBTAINING FURTHER INFORMATION FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR THE COUNTY ASSESSOR. The official website for the Metropolitan District, if any, is: _n/a_.**

     **8.5.**    **Tax Certificate.** A tax certificate paid for by ☒ **Seller** ☐ **Buyer,** for the Property listing any special taxing or metropolitan districts that affect the Property (Tax Certificate) must be delivered to Buyer on or before **Record Title Deadline.** If the content of the Tax Certificate is unsatisfactory to Buyer, in Buyer's sole

subjective discretion, Buyer may terminate, on or before **Record Title Objection Deadline.** Should Buyer receive the Tax Certificate after **Record Title Deadline,** Buyer, at Buyer's option, has the Right to Terminate under § 24.1. by Buyer's Notice to Terminate received by Seller on or before ten days after Buyer's receipt of the Tax Certificate. If Buyer does not receive the Tax Certificate, or if Buyer's Notice to Terminate would otherwise be required to be received by Seller after **Closing Date,** Buyer's Notice to Terminate must be received by Seller on or before Closing. If Seller does not receive Buyer's Notice to Terminate within such time, Buyer accepts the content of the Tax Certificate as satisfactory and Buyer waives any Right to Terminate under this provision. If Buyer's loan specified in §4.5.3. (Loan Limitations) prohibits Buyer from paying for the Tax Certificate, the Tax Certificate will be paid for by Seller.

8.6.    **Third Party Right to Purchase/Approve.** If any third party has a right to purchase the Property (e.g., right of first refusal on the Property, right to purchase the Property under a lease or an option held by a third party to purchase the Property) or a right of a third party to approve this Contract, Seller must promptly submit this Contract according to the terms and conditions of such right. If the third-party holder of such right exercises its right this Contract will terminate. If the third party's right to purchase is waived explicitly or expires, or the Contract is approved, this Contract will remain in full force and effect. Seller must promptly notify Buyer in writing of the foregoing. If the third party right to purchase is exercised or approval of this Contract has not occurred on or before **Third Party Right to Purchase/Approve Deadline**, this Contract will then terminate. Seller will supply to Buyer, in writing, details of any Third Party Right to Purchase the Property on or before the Record Title Deadline.

8.7.    **Right to Object to Title, Resolution.** Buyer has a right to object or terminate, in Buyer's sole subjective discretion, based on any title matters including those matters set forth in § 8.2. (Record Title), § 8.3. (Off-Record Title), § 8.5. (Tax Certificate) and § 13 (Transfer of Title). If Buyer exercises Buyer's rights to object or terminate based on any such title matter, on or before the applicable deadline, Buyer has the following options:

8.7.1.    **Title Objection, Resolution.** If Seller receives Buyer's written notice objecting to any title matter (Notice of Title Objection) on or before the applicable deadline and if Buyer and Seller have not agreed to a written settlement thereof on or before **Title Resolution Deadline**, this Contract will terminate on the expiration of **Title Resolution Deadline**, unless Seller receives Buyer's written withdrawal of Buyer's Notice of Title Objection (i.e., Buyer's written notice to waive objection to such items and waives the Right to Terminate for that reason), on or before expiration of **Title Resolution Deadline**. If either the Record Title Deadline or the Off-Record Title Deadline, or both, are extended pursuant to § 8.2. (Record Title) or § 8.3. (Off-Record Title) the Title Resolution Deadline also will be automatically extended to the earlier of Closing or fifteen days after Buyer's receipt of the applicable documents; or

8.7.2.    **Title Objection, Right to Terminate.** Buyer may exercise the Right to Terminate under § 24.1., on or before the applicable deadline, based on any title matter unsatisfactory to Buyer, in Buyer's sole subjective discretion.

8.8.    **Title Advisory.** The Title Documents affect the title, ownership and use of the Property and should be reviewed carefully. Additionally, other matters not reflected in the Title Documents may affect the title, ownership and use of the Property, including, without limitation, boundary lines and encroachments, set-back requirements, area, zoning, building code violations, unrecorded easements and claims of easements, leases and other unrecorded agreements, water on or under the Property and various laws and governmental regulations concerning land use, development and environmental matters.

8.8.1.    OIL, GAS, WATER AND MINERAL DISCLOSURE. THE SURFACE ESTATE OF THE PROPERTY MAY BE OWNED SEPARATELY FROM THE UNDERLYING MINERAL ESTATE AND TRANSFER OF THE SURFACE ESTATE MAY NOT NECESSARILY INCLUDE TRANSFER OF THE MINERAL ESTATE OR WATER RIGHTS. THIRD PARTIES MAY OWN OR LEASE INTERESTS IN OIL, GAS, OTHER MINERALS, GEOTHERMAL ENERGY OR WATER ON OR UNDER THE SURFACE OF THE PROPERTY, WHICH INTERESTS MAY GIVE THEM RIGHTS TO ENTER AND USE THE SURFACE OF THE PROPERTY TO ACCESS THE MINERAL ESTATE, OIL, GAS OR WATER.

8.8.2.    SURFACE USE AGREEMENT. THE USE OF THE SURFACE ESTATE OF THE PROPERTY TO ACCESS THE OIL, GAS OR MINERALS MAY BE GOVERNED BY A SURFACE USE AGREEMENT, A MEMORANDUM OR OTHER NOTICE OF WHICH MAY BE RECORDED WITH THE COUNTY CLERK AND RECORDER.

8.8.3.    OIL AND GAS ACTIVITY. OIL AND GAS ACTIVITY THAT MAY OCCUR ON OR ADJACENT TO THE PROPERTY MAY INCLUDE, BUT IS NOT LIMITED TO, SURVEYING, DRILLING,

WELL COMPLETION OPERATIONS, STORAGE, OIL AND GAS, OR PRODUCTION FACILITIES, PRODUCING WELLS, REWORKING OF CURRENT WELLS AND GAS GATHERING AND PROCESSING FACILITIES.

**8.8.4.     ADDITIONAL INFORMATION. BUYER IS ENCOURAGED TO SEEK ADDITIONAL INFORMATION REGARDING OIL AND GAS ACTIVITY ON OR ADJACENT TO THE PROPERTY, INCLUDING DRILLING PERMIT APPLICATIONS. THIS INFORMATION MAY BE AVAILABLE FROM THE COLORADO OIL AND GAS CONSERVATION COMMISSION.**

**8.8.5.     Title Insurance Exclusions.** Matters set forth in this Section and others, may be excepted, excluded from, or not covered by the owner's title insurance policy.

**8.9.     Mineral Rights Review.** Buyer has a Right to Terminate if examination of the Mineral Rights is unsatisfactory to Buyer on or before the **Mineral Rights Examination Deadline**.

## 9.     NEW ILC, NEW SURVEY.

**9.1.     New ILC or New Survey.** If the box is checked, (1) ☐ **New Improvement Location Certificate (New ILC);** or, (2) ☐ **New Survey** in the form of ; is required and the following will apply:

**9.1.1.     Ordering of New ILC or New Survey.** ☐ **Seller** ☐ **Buyer** will order the New ILC or New Survey. The New ILC or New Survey may also be a previous ILC or survey that is in the above-required form, certified and updated as of a date after the date of this Contract.

**9.1.2.     Payment for New ILC or New Survey.** The cost of the New ILC or New Survey will be paid, on or before Closing, by: ☐ **Seller** ☐ **Buyer** or:

**9.1.3.     Delivery of New ILC or New Survey.** Buyer, Seller, the issuer of the Title Commitment (or the provider of the opinion of title if an Abstract of Title) and **_n/a_** will receive a New ILC or New Survey on or before **New ILC or New Survey Deadline**.

**9.1.4.     Certification of New ILC or New Survey.** The New ILC or New Survey will be certified by the surveyor to all those who are to receive the New ILC or New Survey.

**9.2.     Buyer's Right to Waive or Change New ILC or New Survey Selection.** Buyer may select a New ILC or New Survey different than initially specified in this Contract if there is no additional cost to Seller or change to the **New ILC or New Survey Objection Deadline**. Buyer may, in Buyer's sole subjective discretion, waive a New ILC or New Survey if done prior to Seller incurring any cost for the same.

**9.3.     New ILC or New Survey Objection.** Buyer has the right to review and object based on the New ILC or New Survey. If the New ILC or New Survey is not timely received by Buyer or is unsatisfactory to Buyer, in Buyer's sole subjective discretion, Buyer may, on or before **New ILC or New Survey Objection Deadline,** notwithstanding § 8.3. or § 13:

**9.3.1.     Notice to Terminate.** Notify Seller in writing, pursuant to § 24.1, that this Contract is terminated; or

**9.3.2.     New ILC or New Survey Objection.** Deliver to Seller a written description of any matter that was to be shown or is shown in the New ILC or New Survey that is unsatisfactory and that Buyer requires Seller to correct.

**9.3.3.     New ILC or New Survey Resolution.** If a **New ILC or New Survey Objection** is received by Seller, on or before **New ILC or New Survey Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **New ILC or New Survey Resolution Deadline**, this Contract will terminate on expiration of the **New ILC or New Survey Resolution Deadline**, unless Seller receives Buyer's written withdrawal of the New ILC or New Survey Objection before such termination (i.e., on or before expiration of **New ILC or New Survey Resolution Deadline**).

---

## DISCLOSURE, INSPECTION AND DUE DILIGENCE

---

## 10.     PROPERTY DISCLOSURE, INSPECTION, INDEMNITY, INSURABILITY, DUE DILIGENCE AND SOURCE OF WATER.

**10.1.     Seller's Property Disclosure.** On or before **Seller's Property Disclosure Deadline,** Seller agrees to deliver to Buyer the most current version of the applicable Colorado Real Estate Commission's Seller's Property Disclosure form completed by Seller to Seller's actual knowledge and current as of the date of the Seller's Property Disclosure Deadline.

**10.2.     Disclosure of Adverse Material Facts; Subsequent Disclosure; Present Condition.** Seller must disclose, in writing, to Buyer any adverse material facts actually known by Seller as of the date of this Contract. In the event Seller discovers an adverse material fact after the date of this Contract, Seller must timely disclose such adverse fact to Buyer. Buyer has the Right to Terminate based on the Seller's new disclosure on the earlier of Closing or five days after Buyer's receipt of the new disclosure. Except as otherwise provided in this Contract, Buyer acknowledges that Seller is conveying the Property, Inclusions, and included Leased Items to Buyer in an **"As Is"** condition, **"Where Is"** and **"With All Faults."**

**10.3.     Inspection.** Unless otherwise provided in this Contract, Buyer, acting in good faith, has the right to have inspections (by one or more third parties, personally or both) of the Property, Leased Items, and Inclusions (Inspection), at Buyer's expense. If (1) the physical condition of the Property, including, but not limited to, the roof, walls, structural integrity of the Property, the electrical, plumbing, HVAC and other mechanical systems of the Property, (2) the physical condition of the Inclusions and Leased Items, (3) service to the Property (including utilities and communication services), systems and components of the Property (e.g., heating and plumbing), (4) any proposed or existing transportation project, road, street or highway, or (5) any other activity, odor or noise (whether on or off the Property) and its effect or expected effect on the Property or its occupants is unsatisfactory, in Buyer's sole subjective discretion, Buyer may:

**10.3.1.     Inspection Termination.** On or before the **Inspection Termination Deadline**, notify Seller in writing, pursuant to § 24.1., that this Contract is terminated due to any unsatisfactory condition, provided the Buyer did not previously deliver an Inspection Objection. Buyer's Right to Terminate under this provision expires upon delivery of an Inspection Objection to Seller pursuant to § 10.3.2.; or

**10.3.2.     Inspection Objection.** On or before the **Inspection Objection Deadline**, deliver to Seller a written description of any unsatisfactory condition that Buyer requires Seller to correct.

**10.3.3.     Inspection Resolution.** If an Inspection Objection is received by Seller, on or before **Inspection Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Inspection Resolution Deadline**, this Contract will terminate on **Inspection Resolution Deadline** unless Seller receives Buyer's written withdrawal of the Inspection Objection before such termination (i.e., on or before expiration of **Inspection Resolution Deadline**). Nothing in this provision prohibits the Buyer and the Seller from mutually terminating this Contract before the Inspection Resolution Deadline passes by executing an Earnest Money Release.

**10.4.     Damage, Liens and Indemnity.** Buyer, except as otherwise provided in this Contract or other written agreement between the parties, is responsible for payment for all inspections, tests, surveys, engineering reports, or other reports performed at Buyer's request (Work) and must pay for any damage that occurs to the Property and Inclusions as a result of such Work. Buyer must not permit claims or liens of any kind against the Property for Work performed on the Property. Buyer agrees to indemnify, protect and hold Seller harmless from and against any liability, damage, cost or expense incurred by Seller and caused by any such Work, claim, or lien. This indemnity includes Seller's right to recover all costs and expenses incurred by Seller to defend against any such liability, damage, cost or expense, or to enforce this Section, including Seller's reasonable attorney fees, legal fees and expenses. The provisions of this Section survive the termination of this Contract. This § 10.4. does not apply to items performed pursuant to an Inspection Resolution.

**10.5.     Insurability.** Buyer has the Right to Terminate under § 24.1., on or before **Property Insurance Termination Deadline**, based on, in Buyer's sole subjective discretion, any unsatisfactory provision of the availability, terms and conditions and premium for property insurance (Property Insurance) on the Property.

**10.6.     Due Diligence.**

**10.6.1.     Due Diligence Documents.** Seller agrees to deliver copies of the following documents and information pertaining to the Property and Leased Items (Due Diligence Documents) to Buyer on or before **Due Diligence Documents Delivery Deadline**:

**10.6.1.1.     Occupancy Agreements.** All current leases, including any amendments or other occupancy agreements, pertaining to the Property. Those leases or other occupancy agreements pertaining to the Property that survive Closing are as follows (Leases):
*post-closing occupancy agreement included - see PCO70 document*

**10.6.1.2.     Leased Items Documents.** If any lease of personal property (§ 2.5.8., Leased Items) will be transferred to Buyer at Closing, Seller agrees to deliver copies of the leases and information pertaining to the personal property to Buyer on or before **Due Diligence Documents Delivery Deadline.**

**10.6.1.3.     Encumbered Inclusions Documents.** If any Inclusions owned by Seller are encumbered pursuant to § 2.5.5. (Encumbered Inclusions) above, Seller agrees to deliver copies of the evidence of debt, security and any other documents creating the encumbrance to Buyer on or before **Due Diligence Documents Delivery Deadline**.

**10.6.1.4.     Solar Power Plan.** Copy of any Solar Power Plan not included in Leased Items (regardless of its name or title).

**10.6.1.5.     Septic Use Permit.** If required by the local health department or other applicable government entity, on or before the local health department's applicable deadline, Seller must pay for and furnish to Buyer a Septic Use Permit.

**10.6.1.6.     Other Documents.** Other documents and information:

*n/a*

**10.6.2.     Due Diligence Documents Review and Objection.** Buyer has the right to review and object based on the Due Diligence Documents. If the Due Diligence Documents are not supplied to Buyer or are unsatisfactory, in Buyer's sole subjective discretion, Buyer may, on or before **Due Diligence Documents Objection Deadline**:

**10.6.2.1.     Notice to Terminate.** Notify Seller in writing, pursuant to § 24.1., that this Contract is terminated; or

**10.6.2.2.     Due Diligence Documents Objection.** Deliver to Seller a written description of any unsatisfactory Due Diligence Documents that Buyer requires Seller to correct.

**10.6.2.3.     Due Diligence Documents Resolution.** If a Due Diligence Documents Objection is received by Seller, on or before **Due Diligence Documents Objection Deadline** and if Buyer and Seller have not agreed in writing to a settlement thereof on or before **Due Diligence Documents Resolution Deadline**, this Contract will terminate on **Due Diligence Documents Resolution Deadline** unless Seller receives Buyer's written withdrawal of the Due Diligence Documents Objection before such termination (i.e., on or before expiration of **Due Diligence Documents Resolution Deadline**).

**10.6.2.4.     Automatic Due Diligence Extension.** If a Due Diligence Document is not delivered on or before the Due Diligence Documents Deadline, Buyer has until the earlier of Closing or ten days after receipt by Buyer to review and object to such Due Diligence Document. If Buyer's right to review and object to such Due Diligence Document is extended due to such Due Diligence Document not being delivered on or before the Due Diligence Documents Deadline, the Due Diligence Document Resolution Deadline will also be extended to the earlier of Closing or fifteen days after Buyer's receipt of such Due Diligence Document.

**10.7.     Conditional Upon Sale of Property.** This Contract is conditional upon the sale and closing of that certain property owned by Buyer and commonly known as *n/a*. Buyer has the Right to Terminate under § 24.1. effective upon Seller's receipt of Buyer's Notice to Terminate on or before **Conditional Sale Deadline** if such property is not sold and closed by such deadline. This Section is for the sole benefit of Buyer. If Seller does not receive Buyer's Notice to Terminate on or before **Conditional Sale Deadline**, Buyer waives any Right to Terminate under this provision.

**10.8.     Source of Potable Water (Residential Land and Residential Improvements Only).** Buyer ☐ **Does** ☒ **Does Not** acknowledge receipt of a copy of Seller's Property Disclosure or Source of Water Addendum disclosing the source of potable water for the Property. ☒ There is **No Well**. Buyer ☐ **Does** ☐ **Does Not** acknowledge receipt of a copy of the current well permit.
**Note to Buyer: SOME WATER PROVIDERS RELY, TO VARYING DEGREES, ON NONRENEWABLE GROUND WATER. YOU MAY WISH TO CONTACT YOUR PROVIDER (OR INVESTIGATE THE DESCRIBED SOURCE) TO DETERMINE THE LONG-TERM SUFFICIENCY OF THE PROVIDER'S WATER SUPPLIES.**

**10.9.     Existing Leases; Modification of Existing Leases; New Leases. [Intentionally Deleted]**

**10.10.     Lead-Based Paint.**

**10.10.1.     Lead-Based Paint Disclosure.** Unless exempt, if the Property includes one or more residential dwellings constructed or a building permit was issued prior to January 1, 1978, for the benefit of Buyer, Seller and all required real estate licensees must sign and deliver to Buyer a completed Lead-Based Paint Disclosure (Sales) form on or before the **Lead-Based Paint Disclosure Deadline**. If Buyer does not timely receive the Lead-Based Paint Disclosure, Buyer may waive the failure to timely receive the Lead-Based Paint Disclosure, or Buyer may exercise Buyer's Right to Terminate under § 24.1. by Seller's receipt of Buyer's Notice to Terminate on or before the expiration of the **Lead-Based Paint Termination Deadline**.

**10.10.2.     Lead-Based Paint Assessment.** If Buyer elects to conduct or obtain a risk assessment or inspection of the Property for the presence of Lead-Based Paint or Lead-Based Paint hazards, Buyer has a Right to Terminate under § 24.1. by Seller's receipt of Buyer's Notice to Terminate on or before the expiration of the **Lead-Based Paint Termination Deadline**. Buyer may elect to waive Buyer's right to conduct or obtain a risk assessment or inspection of the Property for the presence of Lead-Based Paint or Lead-Based Paint hazards. If Seller does not receive Buyer's Notice to Terminate within such time, Buyer accepts the condition of the Property relative to any Lead-Based Paint as satisfactory and Buyer waives any Right to Terminate under this provision.

**10.11.     Carbon Monoxide Alarms. Note:** If the improvements on the Property have a fuel-fired heater or appliance, a fireplace, or an attached garage and include one or more rooms lawfully used for sleeping purposes (Bedroom), the parties acknowledge that Colorado law requires that Seller assure the Property has an operational carbon monoxide alarm installed within fifteen feet of the entrance to each Bedroom or in a location as required by the applicable building code.

**10.12.     Methamphetamine Disclosure.** If Seller knows that methamphetamine was ever manufactured, processed, cooked, disposed of, used or stored at the Property, Seller is required to disclose such fact. No disclosure is required if the Property was remediated in accordance with state standards and other requirements are fulfilled pursuant to § 25-18.5-102, C.R.S., Buyer further acknowledges that Buyer has the right to engage a certified hygienist or industrial hygienist to test whether the Property has ever been used as a methamphetamine laboratory. Buyer has the Right to Terminate under § 24.1., upon Seller's receipt of Buyer's written Notice to Terminate, notwithstanding any other provision of this Contract, based on Buyer's test results that indicate the Property has been contaminated with methamphetamine, but has not been remediated to meet the standards established by rules of the State Board of Health promulgated pursuant to § 25-18.5-102, C.R.S. Buyer must promptly give written notice to Seller of the results of the test.

**10.13.     Radon Disclosure. THE COLORADO DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT STRONGLY RECOMMENDS THAT <u>ALL</u> HOME BUYERS HAVE AN INDOOR RADON TEST PERFORMED BEFORE PURCHASING RESIDENTIAL REAL PROPERTY AND RECOMMENDS HAVING THE RADON LEVELS MITIGATED IF ELEVATED RADON CONCENTRATIONS ARE FOUND. ELEVATED RADON CONCENTRATIONS CAN BE REDUCED BY A RADON MITIGATION PROFESSIONAL.**

**RESIDENTIAL REAL PROPERTY MAY PRESENT EXPOSURE TO DANGEROUS LEVELS OF INDOOR RADON GAS THAT MAY PLACE THE OCCUPANTS AT RISK OF DEVELOPING RADON-INDUCED LUNG CANCER. RADON, A CLASS A HUMAN CARCINOGEN, IS THE LEADING CAUSE OF LUNG CANCER IN NONSMOKERS AND THE SECOND LEADING CAUSE OF LUNG CANCER OVERALL. THE SELLER OF RESIDENTIAL REAL PROPERTY IS REQUIRED TO PROVIDE THE BUYER WITH ANY KNOWN INFORMATION ON RADON TEST RESULTS OF THE RESIDENTIAL REAL PROPERTY.**

**AN ELECTRONIC COPY OF THE MOST RECENT BROCHURE PUBLISHED BY THE DEPARTMENT OF PUBLIC HEALTH AND ENVIRONMENT IN ACCORDANCE WITH C.R.S. §25-11-114(2)(A) THAT PROVIDES ADVICE ABOUT "RADON AND REAL ESTATE TRANSACTIONS IN COLORADO" IS AVAILABLE AT: HTTPS://CDPHE.COLORADO.GOV/RADON-AND-REAL-ESTATE**

**11.     COLORADO FORECLOSURE PROTECTION ACT.** The Colorado Foreclosure Protection Act (Act) generally applies if: (1) the Property is residential, (2) Seller resides in the Property as Seller's principal residence, (3) Buyer's purpose in purchase of the Property is not to use the Property as Buyer's personal residence and (4) the Property is in foreclosure or Buyer has notice that any loan secured by the Property is at least thirty days delinquent or in default. If the transaction is a Short Sale transaction and a Short Sale Addendum is part of this Contract, the Act does not apply. Each party is further advised to consult an attorney.

**11.1.     Buyer and Seller agree to all of the following five conditions:**

**11.1.1.     Buyer will not assume any financial or legal obligations of Seller;**

**11.1.2.     There are no rental agreements or leases for the Property between Buyer and Seller;**

**11.1.3.     Seller does not have an option or right to repurchase the Property;**

**11.1.4.     A Notice of Cancellation and Seller Warning are attached to this Contract; and**

**11.1.5.     No consideration will be paid to Seller prior to the expiration of Seller's right to cancel this Contract.**

**11.2.     Seller's principal language is <u>*English*</u>.** If English is not the Seller's principal language and the Homeowner Warning Notice (HWN65-8-10) has not been translated to the Seller's principal language prior to

Seller signing this Contract, this document is void and of no effect.

**11.3.** If this § 11.3., § 11.2., or any of the five conditions in § 11.1. above are deleted, changed, modified or amended at any time prior to or at Closing, the parties agree that this Contract is void and of no effect.

<div style="text-align:center; border:1px solid black; display:inline-block;">

**Closing Provisions**

</div>

**12. CLOSING DOCUMENTS, INSTRUCTIONS AND CLOSING.**

**12.1. Closing Documents and Closing Information.** Seller and Buyer will cooperate with the Closing Company to enable the Closing Company to prepare and deliver documents required for Closing to Buyer and Seller and their designees. If Buyer is obtaining a loan to purchase the Property, Buyer acknowledges Buyer's lender is required to provide the Closing Company, in a timely manner, all required loan documents and financial information concerning Buyer's loan. Buyer and Seller will furnish any additional information and documents required by Closing Company that will be necessary to complete this transaction. Buyer and Seller will sign and complete all customary or reasonably required documents at or before Closing.

**12.2. Closing Instructions.** Colorado Real Estate Commission's Closing Instructions ☐ **Are** ☒ **Are Not** executed with this Contract.

**12.3. Closing.** Delivery of deed from Seller to Buyer will be at closing (Closing). Closing will be on the date specified as the **Closing Date** or by mutual agreement at an earlier date. At Closing, Seller must provide Buyer with the ability to access the Property (e.g. keys, access code, garage door opener). The hour and place of Closing will be as designated by ***mutual agreement of seller, buyer, and title company***.

**12.4. Disclosure of Settlement Costs.** Buyer and Seller acknowledge that costs, quality and extent of service vary between different settlement service providers (e.g., attorneys, lenders, inspectors and title companies).

**12.5. Assignment of Leases.** Seller must assign to Buyer all Leases at Closing that will continue after Closing and Buyer must assume Seller's obligations under such Leases. Further, Seller must transfer to Buyer all Leased Items and assign to Buyer such leases for the Leased Items accepted by Buyer pursuant to § 2.5.8. (Leased Items).

**13. TRANSFER OF TITLE.** Subject to Buyer's compliance with the terms and provisions of this Contract, including the tender of any payment due at Closing, Seller must execute and deliver the following good and sufficient deed to Buyer, at Closing: ☐ special warranty deed ☒ general warranty deed ☐ bargain and sale deed ☐ quit claim deed ☐ personal representative's deed ☐ deed. Seller, provided another deed is not selected, must execute and deliver a good and sufficient special warranty deed to Buyer, at Closing.

Unless otherwise specified in § 30 (Additional Provisions), if title will be conveyed using a special warranty deed or a general warranty deed, title will be conveyed "subject to statutory exceptions" as defined in §38-30-113(5)(a), C.R.S.

**14. PAYMENT OF LIENS AND ENCUMBRANCES.** Unless otherwise agreed to in this Contract or by Buyer in writing, any amounts owed on any liens or encumbrances against the Property or Inclusions, including any governmental liens for special improvements installed as of the date of Buyer's signature hereon, whether assessed or not, and previous years' taxes, will be paid before Closing by Seller, at Closing from the proceeds of this transaction or from any other source.

**15. CLOSING COSTS, FEES, ASSOCIATION STATUS LETTER AND DISBURSEMENTS, TAXES AND WITHHOLDING.**

**15.1. Closing Costs.** Buyer and Seller must pay, in Good Funds, their respective closing costs and all other items required to be paid at Closing, except as otherwise provided herein. However, if Buyer's loan specified in §4.5.3. (Loan Limitations) prohibits Buyer from paying for any of the fees contained in this Section, the fees will be paid for by Seller.

**15.2. Closing Services Fee.** The fee for real estate closing services must be paid at Closing by ☒ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **Other** .

**15.3.** **Association Fees and Required Disbursements.** At least fourteen days prior to **Closing Date**, Seller agrees to promptly request that the Closing Company or the Association deliver to Buyer a current Status Letter, if applicable. Any fees associated with or specified in the Status Letter will be paid as follows:

**15.3.1.** **Status Letter Fee.** Any fee incident to the issuance of Association's Status Letter must be paid by Seller.

**15.3.2.** **Record Change Fee.** Any Record Change Fee must be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.3.3.** **Reserves or Working Capital.** Unless agreed to otherwise, all reserves or working capital due (or other similar cost not addressed in § 16.2. (Association Assessments)) at Closing must be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.3.4.** **Other Fees.** Any other fee listed in the Status Letter as required to be paid at Closing will be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.4.** **Local Transfer Tax.** Any Local Transfer Tax must be paid at Closing by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☒ **N/A.**

**15.5.** **Sales and Use Tax.** Any sales and use tax that may accrue because of this transaction must be paid when due by ☐ **Buyer** ☐ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☒ **N/A.**

**15.6.** **Private Transfer Fee.** Any private transfer fees and other fees due to a transfer of the Property, payable at Closing, such as community association fees, developer fees and foundation fees, must be paid at Closing by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.7.** **Water Transfer Fees.** Water Transfer Fees can change. The fees, as of the date of this Contract, do not exceed $*250* for:
☐ Water District/Municipality ☐ Water Stock
☐ Augmentation Membership ☐ Small Domestic Water Company ☐
and must be paid at Closing by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.8.** **Utility Transfer Fees.** Utility transfer fees can change. Any fees to transfer utilities from Seller to Buyer must be paid by ☐ **Buyer** ☒ **Seller** ☐ **One-Half by Buyer and One-Half by Seller** ☐ **N/A.**

**15.9.** **FIRPTA and Colorado Withholding.**

**15.9.1.** **FIRPTA.** The Internal Revenue Service (IRS) may require a substantial portion of the Seller's proceeds be withheld after Closing when Seller is a foreign person. If required withholding does not occur, the Buyer could be held liable for the amount of the Seller's tax, interest and penalties. If the box in this Section is checked, Seller represents that Seller ☐ **IS** a foreign person for purposes of U.S. income taxation. If the box in this Section is not checked, Seller represents that Seller is not a foreign person for purposes of U.S. income taxation. Seller agrees to cooperate with Buyer and Closing Company to provide any reasonably requested documents to verify Seller's foreign person status. If withholding is required, Seller authorizes Closing Company to withhold such amount from Seller's proceeds. Seller should inquire with Seller's tax advisor to determine if withholding applies or if an exemption exists.

**15.9.2.** **Colorado Withholding.** The Colorado Department of Revenue may require a portion of the Seller's proceeds be withheld after Closing when Seller will not be a Colorado resident after Closing, if not otherwise exempt. Seller agrees to cooperate with Buyer and Closing Company to provide any reasonably requested documents to verify Seller's status. If withholding is required, Seller authorizes Closing Company to withhold such amount from Seller's proceeds. Seller should inquire with Seller's tax advisor to determine if withholding applies or if an exemption exists.

**16.** **PRORATIONS AND ASSOCIATION ASSESSMENTS.**

**16.1.** **Prorations.** The following will be prorated to the **Closing Date**, except as otherwise provided:

**16.1.1.** **Taxes.** Personal property taxes, if any, special taxing district assessments, if any, and general real estate taxes for the year of Closing, based on
☐ **Taxes for the Calendar Year Immediately Preceding Closing**
☒ **Most Recent Mill Levy and Most Recent Assessed or Actual Valuation per the county assessor,**
adjusted by any applicable qualifying seniors property tax exemption, qualifying disabled veteran exemption or
☐ **Other**
*n/a*

**16.1.2.** **Rents.** Rents based on ☐ **Rents Actually Received** ☐ **Accrued.** At Closing, Seller will transfer or credit to Buyer the security deposits for all Leases assigned to Buyer, or any remainder after lawful

deductions, and notify all tenants in writing of such transfer and of the transferee's name and address.

**16.1.3.   Other Prorations.** Water and sewer charges, propane, interest on continuing loan and
*n/a*

**16.1.4.   Final Settlement.** Unless otherwise specified in Additional Provisions, these prorations are final.

**16.2.   Association Assessments.** Current regular Association assessments and dues (Association Assessments) paid in advance will be credited to Seller at Closing. All Association Assessments accrued before Closing must be paid by Seller and all Association Assessments accrued after Closing must be paid by Buyer. Cash reserves held out of the regular Association Assessments for deferred maintenance by the Association will not be credited to Seller except as may be otherwise provided by the Governing Documents. Any special assessment assessed prior to **Closing Date** by the Association will be the obligation of ☐ **Buyer** ☒ **Seller.** Except however, any special assessment by the Association for improvements that have been installed as of the date of Buyer's signature hereon, whether assessed prior to or after Closing, will be the obligation of Seller unless otherwise specified in Additional Provisions. Seller represents there are no unpaid regular or special assessments against the Property except the current regular assessments and
*n/a*
Association Assessments are subject to change as provided in the Governing Documents.

**17.   POSSESSION.** Possession of the Property and Inclusions will be delivered to Buyer on **Possession Date** at **Possession Time**, subject to the Leases as set forth in § 10.6.1.1.

If Seller, after Closing occurs, fails to deliver possession as specified, Seller will be subject to eviction and will be additionally liable to Buyer, notwithstanding § 20.2. (If Seller is in Default), for payment of $ *500* per day (or any part of a day notwithstanding § 3.3., Day) from **Possession Date** and **Possession Time** until possession is delivered. Additionally, Buyer may pursue a claim against Seller for any of Buyer's actual additional damages incurred by Buyer in excess of such amount.

<div style="border:1px solid black; text-align:center">

**General Provisions**

</div>

**18.   CAUSES OF LOSS, INSURANCE; DAMAGE TO INCLUSIONS AND SERVICES; CONDEMNATION; AND WALK-THROUGH.** Except as otherwise provided in this Contract, the Property and Inclusions will be delivered in the condition existing as of the date of this Contract, ordinary wear and tear excepted.

**18.1.   Causes of Loss, Insurance.** In the event the Property or Inclusions are damaged by fire, other perils or causes of loss prior to Closing (Property Damage) in an amount of not more than ten percent of the total Purchase Price and if the repair of the damage will be paid by insurance (other than the deductible to be paid by Seller), then Seller, upon receipt of the insurance proceeds, will use Seller's reasonable efforts to repair the Property before **Closing Date**. Buyer has the Right to Terminate under § 24.1., on or before **Closing Date**, if the Property is not repaired before **Closing Date**, or if the damage exceeds such sum. Should Buyer elect to carry out this Contract despite such Property Damage, Buyer is entitled to a credit at Closing for all insurance proceeds that were received by Seller (but not the Association, if any) resulting from damage to the Property and Inclusions, plus the amount of any deductible provided for in the insurance policy. This credit may not exceed the Purchase Price. In the event Seller has not received the insurance proceeds prior to Closing, the parties may agree to extend the **Closing Date** to have the Property repaired prior to Closing or, at the option of Buyer, (1) Seller must assign to Buyer the right to the proceeds at Closing, if acceptable to Seller's insurance company and Buyer's lender; or (2) the parties may enter into a written agreement prepared by the parties or their attorney requiring the Seller to escrow at Closing from Seller's sale proceeds the amount Seller has received and will receive due to such damage, not exceeding the total Purchase Price, plus the amount of any deductible that applies to the insurance claim.

**18.2.   Damage, Inclusions and Services.** Should any Inclusion or service (including utilities and communication services), system, component or fixture of the Property (collectively Service) (e.g., heating or plumbing), fail or be damaged between the date of this Contract and Closing or possession, whichever is earlier, then Seller is liable for the repair or replacement of such Inclusion or Service with a unit of similar size, age and quality, or an equivalent credit, but only to the extent that the maintenance or replacement of such Inclusion or Service is not the responsibility of the Association, if any, less any insurance proceeds received by Buyer covering such repair or replacement. If the failed or damaged Inclusion or Service is not repaired or

replaced on or before Closing or possession, whichever is earlier, Buyer has the Right to Terminate under § 24.1., on or before **Closing Date**, or, at the option of Buyer, Buyer is entitled to a credit at Closing for the repair or replacement of such Inclusion or Service. Such credit must not exceed the Purchase Price. If Buyer receives such a credit, Seller's right for any claim against the Association, if any, will survive Closing.

**18.3.   Condemnation.** In the event Seller receives actual notice prior to Closing that a pending condemnation action may result in a taking of all or part of the Property or Inclusions, Seller must promptly notify Buyer, in writing, of such condemnation action. Buyer has the Right to Terminate under § 24.1., on or before **Closing Date**, based on such condemnation action, in Buyer's sole subjective discretion. Should Buyer elect to consummate this Contract despite such diminution of value to the Property and Inclusions, Buyer is entitled to a credit at Closing for all condemnation proceeds awarded to Seller for the diminution in the value of the Property or Inclusions. Such credit will not include relocation benefits or expenses or exceed the Purchase Price.

**18.4.   Walk-Through and Verification of Condition.** Buyer, upon reasonable notice, has the right to walk through the Property prior to Closing to verify that the physical condition of the Property and Inclusions complies with this Contract.

**19.   RECOMMENDATION OF LEGAL AND TAX COUNSEL.** By signing this Contract, Buyer and Seller acknowledge that their respective broker has advised that this Contract has important legal consequences and has recommended: (1) legal examination of title; (2) consultation with legal and tax or other counsel before signing this Contract as this Contract may have important legal and tax implications; (3) to consult with their own attorney if Water Rights, Mineral Rights or Leased Items are included or excluded in the sale; and (4) to consult with legal counsel if there are other matters in this transaction for which legal counsel should be engaged and consulted. Such consultations must be done timely as this Contract has strict time limits, including deadlines, that must be complied with.

**20.   TIME OF ESSENCE, DEFAULT AND REMEDIES.** Time is of the essence for all dates and deadlines in this Contract. This means that all dates and deadlines are strict and absolute. If any payment due, including Earnest Money, is not paid, honored or tendered when due, or if any obligation is not performed timely as provided in this Contract or waived, the non-defaulting party has the following remedies:

**20.1.   If Buyer is in Default:**

☐   **20.1.1.   Specific Performance.** Seller may elect to cancel this Contract and all Earnest Money (whether or not paid by Buyer) will be paid to Seller and retained by Seller. It is agreed that the Earnest Money is not a penalty, and the parties agree the amount is fair and reasonable. Seller may recover such additional damages as may be proper. Alternatively, Seller may elect to treat this Contract as being in full force and effect and Seller has the right to specific performance or damages, or both.

**20.1.2.   Liquidated Damages, Applicable. This § 20.1.2. applies <u>unless the box in § 20.1.1. is checked</u>.** Seller may cancel this Contract. All Earnest Money (whether or not paid by Buyer) will be paid to Seller and retained by Seller. It is agreed that the Earnest Money amount specified in § 4.1. is LIQUIDATED DAMAGES and not a penalty, which amount the parties agree is fair and reasonable and (except as provided in §§ 10.4. and 21), such amount is SELLER'S ONLY REMEDY for Buyer's failure to perform the obligations of this Contract. Seller expressly waives the remedies of specific performance and additional damages.

**20.2.   If Seller is in Default:**

**20.2.1.   Specific Performance, Damages or Both.** Buyer may elect to treat this Contract as canceled, in which case all Earnest Money received hereunder will be returned to Buyer and Buyer may recover such damages as may be proper. Alternatively, in addition to the per diem in § 17 (Possession) for failure of Seller to timely deliver possession of the Property after Closing occurs, Buyer may elect to treat this Contract as being in full force and effect and Buyer has the right to specific performance or damages, or both.

**20.2.2.   Seller's Failure to Perform.** In the event Seller fails to perform Seller's obligations under this Contract, to include, but not limited to, failure to timely disclose Association violations known by Seller, failure to perform any replacements or repairs required under this Contract or failure to timely disclose any known adverse material facts, Seller remains liable for any such failures to perform under this Contract after Closing. Buyer's rights to pursue the Seller for Seller's failure to perform under this Contract are reserved and survive Closing.

**21.   LEGAL FEES, COST AND EXPENSES.** Anything to the contrary herein notwithstanding, in the event of any arbitration or litigation relating to this Contract, prior to or after **Closing Date**, the arbitrator or court must award to the prevailing party all reasonable costs and expenses, including attorney fees, legal fees and expenses.

**22.   MEDIATION.** If a dispute arises relating to this Contract (whether prior to or after Closing) and the dispute is not resolved, the parties must first proceed, in good faith, to mediation before proceeding to arbitration or litigation. Mediation is a process in which the parties meet with an impartial person who helps to resolve the dispute informally and confidentially. Mediators cannot impose binding decisions. Before any mediated settlement is binding, the parties to the dispute must agree to the settlement, in writing. A party requesting mediation must deliver written notice requesting mediation to the other party as provided in § 26. The parties will jointly appoint an acceptable mediator and will share equally in the cost of such mediation. The obligation to mediate, unless otherwise agreed, will terminate if the entire dispute is not resolved within thirty days of the date of written notice requesting mediation. Nothing in this Section prohibits either party from filing a lawsuit and recording a *lis pendens* affecting the Property, before or after the date of written notice requesting mediation. This Section will not alter any date in this Contract, unless otherwise agreed.

**23.   EARNEST MONEY DISPUTE.** Except as otherwise provided herein, Earnest Money Holder must release the Earnest Money following receipt of written mutual instructions (e.g., Earnest Money Release form), signed by both Buyer and Seller. In the event of any controversy regarding the Earnest Money, Earnest Money Holder is not required to release the Earnest Money. Earnest Money Holder, in its sole subjective discretion, has several options: (1) wait for any proceeding between Buyer and Seller; (2) interplead all parties and deposit Earnest Money into a court of competent jurisdiction (Earnest Money Holder is entitled to recover court costs and reasonable attorney and legal fees incurred with such action); or (3) provide notice to Buyer and Seller that unless Earnest Money Holder receives a copy of the Summons and Complaint or Claim (between Buyer and Seller) containing the case number of the lawsuit (Lawsuit) within one hundred twenty days of Earnest Money Holder's notice to the parties, Earnest Money Holder is authorized to return the Earnest Money to Buyer. In the event Earnest Money Holder does receive a copy of the Lawsuit and has not interpled the monies at the time of any Order, Earnest Money Holder must disburse the Earnest Money pursuant to the Order of the Court. The parties reaffirm the obligation of § 22 (Mediation). This Section will survive cancellation or termination of this Contract.

**24.   TERMINATION.**

   **24.1.   Right to Terminate.** If a party has a right to terminate, as provided in this Contract (Right to Terminate), the termination is effective upon the other party's receipt of a written notice to terminate (Notice to Terminate), provided such written notice was received on or before the applicable deadline specified in this Contract. If the Notice to Terminate is not received on or before the specified deadline, the party with the Right to Terminate accepts the specified matter, document or condition as satisfactory and waives the Right to Terminate under such provision. Any Notice to Terminate delivered after the applicable deadline specified in the Contract is ineffective and does not terminate this Contract.

   **24.2.   Effect of Termination.** In the event this Contract is terminated, all Earnest Money received hereunder must be timely returned to Buyer and the parties are then relieved of all obligations hereunder, subject to §§ 10.4. and 21.

**25.   ENTIRE AGREEMENT, MODIFICATION, SURVIVAL; SUCCESSORS.** This Contract, its exhibits and specified addenda, constitute the entire agreement between the parties relating to the subject hereof and any prior agreements pertaining thereto, whether oral or written, have been merged and integrated into this Contract. No subsequent modification of any of the terms of this Contract is valid, binding upon the parties, or enforceable unless made in writing and signed by the parties. Any right or obligation in this Contract that, by its terms, exists or is intended to be performed after termination or Closing survives the same. Any successor to a party receives the predecessor's benefits and obligations of this Contract.

**26.   NOTICE, DELIVERY AND CHOICE OF LAW.**

   **26.1.   Physical Delivery and Notice.** Any document or notice to Buyer or Seller must be in writing, except as provided in § 26.2. and § 26.3. and is effective when physically received by such party, any

individual named in this Contract to receive documents or notices for such party, Broker, or Brokerage Firm of Broker working with such party (except any notice or delivery after Closing must be received by the party, not Broker or Brokerage Firm).

   **26.2.    Electronic Notice.** As an alternative to physical delivery, any notice may be delivered in electronic form to Buyer or Seller, any individual named in this Contract to receive documents or notices for such party, Broker or Brokerage Firm of Broker working with such party (except any notice or delivery after Closing, cancellation or Termination must be received by the party, not Broker or Brokerage Firm) at the electronic address of the recipient by facsimile, email or ***ctm econtracts***.

   **26.3.    Electronic Delivery.** Electronic Delivery of documents may be delivered by: (1) email at the email address of the recipient, (2) a link or access to a website or server provided the recipient receives the information necessary to access the documents, or (3) facsimile at the facsimile number (Fax No.) of the recipient.

   **26.4.    Choice of Law.** This Contract and all disputes arising hereunder are governed by and construed in accordance with the laws of the State of Colorado that would be applicable to Colorado residents who sign a contract in Colorado for real property located in Colorado.

**27.    NOTICE OF ACCEPTANCE, COUNTERPARTS.** This proposal will expire unless accepted in writing, by Buyer and Seller, as evidenced by their signatures below and the offering party receives notice of such acceptance pursuant to § 26 on or before **Acceptance Deadline Date** and **Acceptance Deadline Time**. If accepted, this document will become a contract between Seller and Buyer. A copy of this Contract may be executed by each party, separately and when each party has executed a copy thereof, such copies taken together are deemed to be a full and complete contract between the parties.

**28.    GOOD FAITH.** Buyer and Seller acknowledge that each party has an obligation to act in good faith including, but not limited to, exercising the rights and obligations set forth in the provisions of **Financing Conditions and Obligations**; **Title Insurance, Record Title and Off-Record Title**; **New ILC, New Survey**; and **Property Disclosure, Inspection, Indemnity, Insurability Due Diligence and Source of Water**.

**29.    BUYER'S BROKERAGE FIRM COMPENSATION.** Buyer's brokerage firm's compensation will be paid, at Closing, as follows:

   ☐ **29.1.    *n/a*** % of the Purchase Price or $***n/a*** by Seller. Buyer's brokerage firm is an intended third party beneficiary under this provision only. The amount paid by Seller under this provision is in addition to any other amounts Seller is paying on behalf of Buyer elsewhere in this Contract.

   ☐ **29.2.    *n/a*** % of the Purchase Price or $***n/a*** by Buyer pursuant to a separate agreement between Buyer and Buyer's brokerage firm. This amount may be modified between Buyer and Buyer's brokerage firm outside of this Contract.

   ☐ **29.3.    *n/a*** % of the Purchase Price or $***n/a*** by a separate agreement between Buyer's brokerage firm and Seller's brokerage firm.

<div style="border:1px solid black; text-align:center;">

## ADDITIONAL PROVISIONS AND ATTACHMENTS

</div>

**30.    ADDITIONAL PROVISIONS. The following additional provisions have not been approved by the Colorado Real Estate Commission.**
***30.1 Buyer is a licensed realtor in the state of Colorado.***

***30.2 Contract is assignable. Buyer not obligated to notify seller of assignment of contract. Contractual obligations survive assignment of contract.***

***30.3 This property is being purchased "as is". Seller not obligated to make any further repairs or spend any more money on the property.***

***30.4 "Official Inspection" is hereby forfeited, inspection (if any) is for buyer`s information, and for the purpose of accessing the property for due diligence.***

*30.5 Seller acknowledges that buyer is an investor and purchases properties with the intent to lease, "flip", resell, or otherwise make a profit. Seller acknowledges that the purchase price may be less than market value, and is willingly selling it as such for convenience, to save time, lack of funds to renovate/update, and/or other personal reasons. Seller waives any claims against any existing equity or added value arising from the property. Buyers has not made seller any representations or promises as to the value of the property in its "as-is" condition.*

*30.6 Seller agrees to allow Buyer to put a lockbox on the house, and leave a key in the lockbox to access the property during escrow period. Buyer to give Seller a minimum of 24 hours notice, and limit any private access to 2 hours maximum.*

*30.7 Buyer opts to select title insurance company, at buyer`s cost via 8.1.2.*

*Title company chosen by buyer:*
*Equity Title of Colorado*
*165 S Union Blvd Suite 605*
*Lakewood, CO, 80228*
*Closer: Cindey Hawk*
*CHawk@equitycol.com*
*303-563-4640*

**31.    OTHER DOCUMENTS.**

    **31.1.    Documents Part of Contract.** The following documents **are a part** of this Contract:
*PCO70 - Post Closing Occupancy Agreement*

    **31.2.    Documents Not Part of Contract.** The following documents have been provided but are **not** a part of this Contract:
*n/a*

    **31.3.    Colorado Foreclosure Protection Act Documents.** Additionally, the following disclosure forms **are attached** but are **not** a part of this Contract:
      **Seller Warning – Equity Skimming**
      **Notice of Cancellation (original and a copy)**
      **Homeowner Warning Notice – Right to Cancel (in Seller's principal language of *English*)**

**Note: The following provision must be completed with the name of Buyer inserted:**

<div align="center">

**NOTICE REQUIRED BY COLORADO LAW**

</div>

    **UNTIL YOUR RIGHT TO CANCEL THIS CONTRACT HAS ENDED, *Wise Investments Limited* (BUYER'S NAME) OR ANYONE WORKING FOR *Wise Investments Limited* (BUYER'S NAME) CANNOT ASK YOU TO SIGN OR HAVE YOU SIGN ANY DEED OR ANY OTHER DOCUMENT.**

**Note: Buyer is required to specify the date and time of day on which the cancellation right ends:**

**"YOU (SELLER) MAY CANCEL THIS CONTRACT FOR THE SALE OF YOUR HOUSE (PROPERTY) WITHOUT ANY PENALTY OR OBLIGATION AT ANY TIME BEFORE *4/28/26 by midnight* (DATE AND**

**TIME OF DAY). SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT."**

**Note: *Specify the date and time as the earlier of: 12 Midnight, third business day after Seller signs the Contract; or 12 Noon the day before the foreclosure sale.**

---

| **Signatures** |
| --- |

*Geoffrey Willcox, Member*
_____   Date:   **4/22/2026**

Buyer: ***Wise Investments Limited***
       ***By: Geoffrey Willcox, Member***

**[NOTE: If this offer is being countered or rejected, do not sign this document.]**

*Kia Lamicq*
_____   Date:   **4/22/2026**

Seller: ***Kia Lamicq***

---

| **END OF CONTRACT TO BUY AND SELL REAL ESTATE** |
| --- |

---

## BROKER'S ACKNOWLEDGMENTS AND COMPENSATION DISCLOSURE.

**A.   Broker Working With Buyer**

Broker ☐ **Does** ☒ **Does Not** acknowledge receipt of Earnest Money deposit. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 23, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Buyer as a ☒ **Buyer's Agent** ☐ **Transaction-Broker** in this transaction.

☐ **Customer.** Broker has no brokerage relationship with Buyer. See § B for Broker's brokerage relationship with Seller.

Brokerage Firm's compensation or commission is to be paid as specified in §29 above.

This Broker's Acknowledgments and Compensation Disclosure is for disclosure purposes only and does NOT create any claim for compensation. Any compensation agreement between the brokerage firms must be entered into separately and apart from this provision.

Brokerage Firm's Name: ***LoKation Real Estate***

Brokerage Firm's License #: *EC 100066560*

*Geoffrey Willcox*

Date: *4/22/2026*

Broker's Name: *Geoffrey Willcox*

Broker's License #:

Address: *7200 S ALTON WAY STE B120 CENTENNIAL, CO 80112*

Phone No.:

Fax No.:

Email Address: *geoff@gwluxuryliving.com*

## B.   Broker Working with Seller

Broker ○ **Does** ○ **Does Not** ○ (Clr) acknowledge receipt of Earnest Money deposit. Broker agrees that if Brokerage Firm is the Earnest Money Holder and, except as provided in § 23, if the Earnest Money has not already been returned following receipt of a Notice to Terminate or other written notice of termination, Earnest Money Holder will release the Earnest Money as directed by the written mutual instructions. Such release of Earnest Money will be made within five days of Earnest Money Holder's receipt of the executed written mutual instructions, provided the Earnest Money check has cleared.

Broker is working with Seller as a ○ **Seller's Agent** ○ **Transaction-Broker** ○ (Clr) in this transaction.

☑ **Customer.** Broker has no brokerage relationship with Seller. See § A for Broker's brokerage relationship with Buyer.

Brokerage Firm's compensation or commission is to be paid by ○ **Seller** ○ **Buyer** ○ **Other**
[                    ]. ○ (Clr)

This Broker's Acknowledgments and Compensation Disclosure is for disclosure purposes only and does NOT create any claim for compensation. Any agreement to pay compensation must be entered into separately and apart from this provision.

Brokerage Firm's Name:

Brokerage Firm's License #: [                    ]

Broker's Signature _____   Date: _____

Broker's Name:

Broker's License #: [                    ]

Address: *,*

Phone No.:

Fax No.:

Email Address:

---

**CBSF1 CONTRACT TO BUY AND SELL REAL ESTATE (RESIDENTIAL) (Colorado Foreclosure Protection Act)**

CTM eContracts - ©2026 MRI Software LLC - All Rights Reserved

# Exhibit "B"



## Equity Title of Colorado

710 Kipling Street
Suite 100
Lakewood, CO 80215
(303) 563-4640

# Seller's Estimated Closing Statement

| | | | | | |
|---|---|---|---|---|---|
| **Property** | 704 Huntington Drive | **Escrow Officer** | Cindey Hawk | **Prepared** | 05/08/2026 |
| | Highlands Ranch, CO 80104 | **Seller** | Kia Lamicq | **Closing** | 05/28/2026 |
| **Escrow #** | 201456-LKWD-CH | | | **Disbursement Date** | 05/28/2026 |

| | Debit | Credit |
|---|---:|---:|
| **Primary Charges & Credits** | | |
| Sale Price of Property | | $586,000.00 |
| | | |
| **Prorations/Adjustments** | | |
| County Taxes ($5,331.78 @ $14.61/day) 01/01/2026 to 05/28/2026 | $2,147.67 | |
| | | |
| **Loan Charges** | | |
| Real Estate Closing Fee to Equity Title of Colorado | $200.00 | |
| Tax Certificate to Equity Title of Colorado | $30.00 | |
| | | |
| **Payoffs/Payments** | | |
| Payoff to NBH Bank | $392,500.00 | |
| | | |
| **Miscellaneous Charges** | | |
| 2nd 1/2 2025 Taxes to Douglas County Treasurer | $2,665.89 | |
| HOA Dues to Highlands Ranch | $3,500.00 | |
| HOA Transfer Fees to Association Online | $1,500.00 | |
| Water Escrow to Highlands Ranch Metro District | $3,000.00 | |
| | **Debit** | **Credit** |
| **Subtotals** | $405,543.56 | $586,000.00 |
| Due to Seller | $180,456.44 | |
| **Totals** | $586,000.00 | $586,000.00 |

Acknowledgement
This is an estimate only and subject to change.
We/I have carefully reviewed the Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements made on my account or by me in this transaction and further certify that I have received a copy of the Settlement Statement.
We/I authorize Equity Title of Colorado to cause the funds to be disbursed in accordance with this statement.

_____                Date          _____                Date
Kia Lamicq                                                    Settlement Agent

# Exhibit "C"



# ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)

ISSUED BY
STEWART TITLE GUARANTY COMPANY

## NOTICE

**IMPORTANT - READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

## COMMITMENT TO ISSUE POLICY

Subject to the Notice; Schedule B, Part I - Requirements; Schedule B, Part II - Exceptions; and the Commitment Conditions, STEWART TITLE GUARANTY COMPANY, a Texas corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I - Requirements have not been met within six months after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

_____
Authorized Countersignature
Equity Title of Colorado
710 Kipling Street, Suite 100
Lakewood, CO 80215

_____
Frederick H. Eppinger, President and CEO

_____
David Hisey, Secretary

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance (07-01-2021)
Page 1 of 18



## COMMITMENT CONDITIONS

1. **DEFINITIONS**
   a. "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
   b. "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
   c. "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
   d. "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
   e. "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
   f. "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
   g. "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.
   h. "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.
   i. "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.
   j. "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2. If all of the Schedule B, Part I - Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3. The Company's liability and obligation is limited by and this Commitment is not valid without:
   a. the Notice;
   b. the Commitment to Issue Policy;
   c. the Commitment Conditions;
   d. Schedule A;
   e. Schedule B, Part I - Requirements;
   f. Schedule B, Part II - Exceptions; and
   g. a countersignature by the Company or its issuing agent that may be in electronic form.

4. **COMPANY'S RIGHT TO AMEND**
   The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance (07-01-2021)
Page 2 of 18



AMERICAN
LAND TITLE
ASSOCIATION

5. **LIMITATIONS OF LIABILITY**
   a. The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
      i. comply with the Schedule B, Part I - Requirements;
      ii. eliminate, with the Company's written consent, any Schedule B, Part II - Exceptions; or
      iii. acquire the Title or create the Mortgage covered by this Commitment.
   b. The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
   c. The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
   d. The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
   e. The Company is not liable for the content of the Transaction Identification Data, if any.
   f. The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I - Requirements have been met to the satisfaction of the Company.
   g. The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6. **LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM**
   a. Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.
   b. Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.
   c. This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.
   d. The deletion or modification of any Schedule B, Part II-Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.
   e. Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.
   f. When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

7. **IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**
   The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

8. **PRO-FORMA POLICY**
   The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

9. **CLAIMS PROCEDURES**
   This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance (07-01-2021)
Page 3 of 18



AMERICAN
LAND TITLE
ASSOCIATION

10. **CLASS ACTION**
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION  GIVING RISE TO THIS COMMITMENT,  MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

11. **ARBITRATION**
The Policy contains an arbitration clause. AH arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.


## STEWART TITLE GUARANTY COMPANY


All notices required to be given the Company and any statement in writing required to be furnished the Company shall be addressed to it at: Stewart Title Guaranty Company, P.O. Box 2029, Houston, Texas 77252-2029.

---

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance.  This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II - Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance (07-01-2021)
Page 4 of 18



## ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)
## SCHEDULE A

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: Equity Title of Colorado
Issuing Office: 710 Kipling Street, Suite 100
                      Lakewood, CO 80215
Issuing Office's ALTA® Registry ID: 1162981
Loan ID Number:
Commitment Number: 201456-LKWD-CH
Issuing Office File Number: 201456-LKWD-CH
Property Address: 704 Huntington Drive, Highlands Ranch, CO 80104
Revision Number:

1. **Commitment Date:** April 20, 2026 at 8:00 AM

2. **Policy to be issued:**                                    **Proposed Amount of Insurance**
   (a)   2021 ALTA Owner's Policy
         Proposed Insured: Wise Investments Limited LLC, a Colorado          $586,000.00
         Limited Liability Company

3. **The estate or interest in the Land at the Commitment Date is**:
   fee simple

4. **The Title is, at the Commitment Date, vested in:**
   Kia Lamicq

5. **The Land is described as follows:**
   See Exhibit "A" Attached Hereto.

**EQUITY TITLE OF COLORADO**

*Kuy Roldu*

_____
Authorized Countersignature

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof)  is restricted to ALTA licensees and ALTA members in good standing
as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance Schedule A (07-01-2021)
Page 5 of 18



**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**EXHIBIT "A"**
**LEGAL DESCRIPTION**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**File No.:** 201456-LKWD-CH

Lot 14,
Highlands Ranch Filing No. 97-E,
County of Douglas,
State of Colorado.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof)  is restricted to ALTA licensees and ALTA members in good standing
as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance Schedule A (07-01-2021)
Page 7 of 18



## ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)
## SCHEDULE B PART I

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**File No.:** 201456-LKWD-CH

<div align="center">

**Requirements**

</div>

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the Land or who will make a loan on the Land.  The Company may make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

    a. Duly authorized and executed Deed from Kia Lamicq, to Wise Investments Limited LLC, a Colorado Limited Liability Company, to be executed and recorded at closing.

    NOTE:  The Statement of Authority recorded December 3, 2021, as Reception No. 2021134026 states that Geoffrey Wilcox is/are the Member of Wise Investments Limited LLC, a Colorado Limited Liability Company, and is/are authorized to execute instruments conveying, encumbering or otherwise affecting title to real property on behalf of the entity.

    If the above information has changed, then a new Statement of Authority is required.

5. Release of Deed of Trust from Kia Lamicq to the Public Trustee of Douglas County for the benefit of  NBH Bank to secure an indebtedness in the principal sum of $392,500.00, and any other amounts and/or obligations secured thereby, dated November 29, 2021, and recorded December 8, 2021, as Reception No. 2021135363 .

6. Withdrawal by the Public Trustee of the Notice of Election and Demand for Sale numbered 250204, recorded September 26, 2025 as Reception No. 2025045504 , based upon the Deed of Trust recorded November 29, 2021 as Reception No. 2021135363

7. Certified copy from the United States Bankruptcy Court in and for the District of Colorado in Case No. 26-10471-KHT, Kia Lamicq, debtor, of the Order Approving the Chapter 13 Plan and revesting the debtor.

8. Evidence, if any, that all assessments for common expenses due under the Declaration referred to in Schedule B, Section 2 contained herein, have been paid.

9. Receipt by the Company of a satisfactory Final Affidavit, executed by Wise Investments Limited.

10. Receipt by the Company of a satisfactory Final Affidavit, executed by Kia Lamicq.

11. Payment of all taxes and assessments now due and payable.

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof)  is restricted to ALTA licensees and ALTA members in good standing
as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance Schedule BI (07-01-2021)
Page 8 of 18

AMERICAN
LAND TITLE
ASSOCIATION


**ALTA COMMITMENT FOR TITLE INSURANCE (07-01-2021)**
**SCHEDULE B PART II**

ISSUED BY
STEWART TITLE GUARANTY COMPANY

**File No.:** 201456-LKWD-CH

<div align="center"><b>Exceptions</b></div>

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attaches, or is disclosed between the Commitment Date and the date of which all of the Schedule B, Part I - Requirements are met.

2. Rights or claims of parties in possession not shown by the Public Records.

3. Easement or claims of easements, not shown by the Public Records.

4. Discrepancies, conflicts in boundary lines, shortages in area, encroachments, and any facts which a correct survey and inspection of the Land would disclose and which are not shown by the Public Records.

5. Any lien, or right to a lien for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

6. Taxes and assessments which are a lien or are now due and payable; any tax, special assessment, charge or lien imposed for or by any special taxing district or for water or sewer service; any unredeemed tax sales.

    NOTE: Upon payment of all taxes and assessments now due and payable, as shown in Schedule B - Section 2, Exception 6 will be amended to read as follows: "Taxes and assessments for the year 2025 and subsequent years, a lien, not yet due or payable."

7. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water; (d) Minerals of whatsoever kind, subsurface and surface substances, in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether or not the matters excepted under (a), (b), (c) or (d) are shown by the Public Records or listed in Schedule B.

8. The Planned Community District Development Guide for the New Town of Highlands Ranch, as adopted by the Board of County Commissioners of Douglas County, Colorado, on September 17, 1979, recorded October 25, 1979 in Book 373 at Page 187 , as the same has been, and may hereafter from time to time, be amended.

9. Exception of minerals and mineral rights granted to Highlands Ranch Development Corporation by Mission Viejo Company in Mineral Deed dated September 26, 1980, recorded October 20,1980 in Book 396 at Page 514 and Substances in the ""Full Mineral Rights Land"" and Coal in the ""Coal Lands"" as granted to

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof)  is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance Schedule BII (07-01-2021)



Highlands Ranch Development Corporation by Union Pacific Land Resources Corporation in Mineral Deed dated May 1, 1981, recorded May 20, 1981 in Book 412 at Page 465 ,
reserving to Union Pacific Land Resources Corporation a 25%  nonexecutory interest in and to such mineral substances and coal.
NOTE: Request for Notification of Surface Development recorded May 16, 2002 in Book 2330 at Page 1482 .
NOTE: Relinquishment of Surface Rights recorded March 24, 1994 at Reception No. 9416679 .

10.  Exception of water rights and ground water granted to Highlands Ranch Development Corporation by Mission Viejo Company in Quit Claim Deed and Assignment dated September 26, 1980, recorded October 20, 1980 In Book 396 at Page 520 ; in Quit Claim Deed, Assignment and Bill of Sale dated December 27,1988, recorded December 27, 1988 in </a><a href="https://equitytitleco.qualia.io/download/files/FwsWYH93keyJdWrTD/DKzpKpAxmw58kYcmk/834-63.pdf">Book 834 at Page 63; in Quit Claim Deed and Assignment dated February 17, 1989, recorded March 14, 1989 in Book 844 at Page 1139 ; and in
Quit Claim Deed and assignment dated April 11, 1990, recorded April 25, 1990 in Book 908 at Page 1205 ; a portion of which water rights and ground water were granted to Centennial Water and Sanitation District by Highlands Ranch Development Corporation in Special Warranty Deed,
Assignment and Bill of Sale dated December 27, 1988, recorded December 27, 1988 in Book 834 at Page 84 ; Special Warranty Deed and Assignment dated February 17, 1989, recorded March 14, 1989 in Book 844 at Page 1142 ; and Special Warranty Deed and Assignment dated April 11, 1990,
recorded May 18, 1990 in Book 912 at Page 613; and subject to relinquishment of Surface Rights dated December 27, 1988 by Centennial Water and Sanitation District, recorded December 27, 1988 in Book 834 at Page 119.
NOTE: Relinquishment of Surface Rights recorded March 24, 1994 at Reception No. 9416679.

11.  Covenants, conditions, restrictions and easements, if any, which do not contain a forfeiture or reverter clause, (deleting any restrictions indicating any preference, limitation or discrimination based on race, color, religion, sex, handicap, familial status or national origin) as contained in instrument recorded September 17, 1981 in Book 421 at Page 924 and Supplemental Declaration recorded May 18, 1993 in Book 1125 at Page 1335 and any and all amendments and/or supplements thereto.

12.  Notes and easements as shown on the Plat of Highlands Ranch Filing No. 97-E recorded May 3, 1993 in Plat Book H at Page 331 .

13.  Terms, agreements, provisions, conditions, obligations, easements, and restrictions, if any, as contained in Special Warranty Deed recorded March 24, 1994 at Reception No. 9416678 .

14.  Terms, agreements, provisions, conditions, obligations, easements, and restrictions, if any, as contained in Grant of Easement recorded June 6, 1995 in Book 1267 at Page 409 .

*This page is only a part of a 2021 ALTA® Commitment for Title Insurance. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I - Requirements; and Schedule B, Part II -Exceptions; and a countersignature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association.  All rights reserved.**
The use of this Form (or any derivative thereof)  is restricted to ALTA licensees and ALTA members in good standing as of the date of use.  All other uses are prohibited.  Reprinted under license from the American Land Title Association.
File No.: 201456-LKWD-CH
ALTA Commitment for Title Insurance Schedule BII (07-01-2021)
Page 10 of 18

AMERICAN
LAND TITLE
ASSOCIATION

# DISCLOSURES

File No.:  201456-LKWD-CH

Pursuant to C.R.S. 10-11-122, notice is hereby given that:

    A.  THE SUBJECT REAL PROPERTY MAY BE LOCATED IN A SPECIAL TAXING DISTRICT;

    B.  A CERTIFICATE OF TAXES DUE LISTING EACH TAXING JURISDICTION SHALL BE OBTAINED FROM THE COUNTY TREASURER OR THE COUNTY TREASURER'S AUTHORIZED AGENT;

    C.  INFORMATION REGARDING SPECIAL DISTRICTS AND THE BOUNDARIES OF SUCH DISTRICTS MAY BE OBTAINED FROM THE BOARD OF COUNTY COMMISSIONERS, THE COUNTY CLERK AND RECORDER, OR  THE COUNTY ASSESSOR

---

Note: Colorado Division of Insurance Regulations 8-1-2, Section 5, Paragraph G requires that "Every title entity shall be responsible for all matters which appear of record prior to the time of recording whenever the title entity conducts the closing and is responsible for recording or filing of legal documents resulting from the transaction which was closed." Provided  that Equity Title of Colorado conducts the closing of the insured transaction and is responsible for recording the legal documents from the transaction, exception number 1 will not appear on the Owner's Title Policy and the Lender's Title Policy when issued.

---

Note: Colorado Division of Insurance Regulations 8-1-2, Section 5, Paragraph M requires that every title entity shall notify in writing that

Affirmative Mechanic's Lien Protection for the Owner may be available (typically by deletion of Exception No. 5 of Schedule B, Section 2 of the Commitment from the Owner's Policy to be issued) upon compliance with the following conditions:

    A.  The land described in Schedule A of this commitment must be a single-family residence, which includes a condominium or townhouse unit.

    B.  No labor or materials have been furnished by mechanics or materialmen for purposes of construction on the land described in Schedule A of this Commitment within the past 6 months.

    C.  The Company must receive an appropriate affidavit indemnifying the Company against untiled Mechanic's and Materialmen's Liens.

    D.  The Company must receive payment of the appropriate premium.

    E.  If there has been construction, improvements or major repairs undertaken on the property to be purchased, within six months prior to the Date of the Commitment, the requirements to obtain coverage for unrecorded liens will include: disclosure of certain construction information; financial information as to the seller, the builder and/or the contractor; payment of the appropriate premium; fully executed Indemnity agreements satisfactory to the company; and, any additional requirements as may be necessary after an examination of the aforesaid information by the Company.

No coverage will be given under any circumstances for labor or material for which the insured has contracted for or agreed to pay.

---

To comply with the provisions of C.R.S. 10-11-123, the Company makes the following disclosure:

    a.  That there is recorded evidence that a mineral estate has been severed, leased or otherwise conveyed from the surface estate and that there is a substantial likelihood that a third party holds some or all interest in oil, gas, other minerals, or geothermal energy in the property; and

    b.  That such mineral estate may include the right to enter and use the property without the surface owner's permission.

**NOTE:  THIS DISCLOSURE APPLIES ONLY IF SCHEDULE B, SECTION 2 OF THE TITLE COMMITMENT HEREIN INCLUDES AN EXCEPTION FOR SEVERED MINERALS.**

---

**Notice of Availability of a Closing Protection Letter:** Pursuant to Colorado Division of Insurance Regulation 8-1-3, Section 5, Paragraph C (11)(f), a closing protection letter is available to the consumer.

---

NOTHING HEREIN CONTAINED WILL BE DEEMED TO OBLIGATE THE COMPANY TO PROVIDE ANY OF THE COVERAGES REFERRED TO HEREIN, UNLESS THE ABOVE CONDITIONS ARE FULLY SATISFIED.

**Orange Coast Title Family of Companies**
**PRIVACY POLICY**

**We are committed to Safeguarding Customer Information**
In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information that you provide to us. Therefore, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**
This Privacy Policy governs our use of the information that you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity.

**Types of Information**
Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:
- Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;
- Information we receive from providers of services to us, such as appraisers, appraisal management companies, real estate agents and brokers and insurance agencies (this may include the appraised value, purchase price and other details about the property that is the subject of your transaction with us).
- Information about your transactions with us, our Affiliated Companies, or others; and
- Information we receive from a consumer reporting agency.

**Your California Rights (see attachments) or you may visit our website at <u>https://www.titleadvantage.com/privacypolicy.htm</u> or call toll-free at (866) 241-7373. *Only applies to CA residents***

**Use of Information**
We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis.

**Former Customers**

**Even if you are no longer our customer, our Privacy Policy will continue to apply to you.**

**Confidentiality and Security**
We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

**Other Important Information**
We reserve the right to modify or supplement this Privacy Policy at any time. If our Privacy Policy changes, we will post the updated Privacy Policy on our website and provide the ability to opt out (as required by law) before the new policy becomes effective.

If you have any questions or comments regarding our Privacy Policy you may contact us at our toll free number (866) 241-7373 or email us at <u>dataprivacy@octitle .com</u>.

Privacy Policy Last Revision 12/26/2019
Effective on 1/1/2020

## Your California Rights

*If you are a California resident, you may have certain rights under California law, including but not limited to the California Consumer Privacy Act ("CCPA"). All phrases used herein shall have the same meaning as those phrases used under relevant California law, including but not limited to the CCPA.*

**Right to Know**
You have the right to know:

- The categories of personal information we have collected about or from you;
- The categories of sources from which we collected your personal information;

- The business or commercial purpose for collecting or sharing your personal information;
- The categories of third parties with whom we have shared your personal information; and
- The specific pieces of your personal information we have collected.

***Process to Submit a Request.*** To submit a verified request for this information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by visiting our website https://www.titleadvantage.com/privacypolicy.htm or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle .com.

***Verification Method.*** In order to ensure your personal information is not disclosed to unauthorized parties, and to protect against fraud, we will verify your identity before responding to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right of Deletion**
You have a right to request that we delete the personal information we have collected from or about you.

***Process to Submit a Request.*** To submit a verified request to delete your information you may visit our website at https://www.titleadvantage.com/privacypolicy.htm or call toll-free at (866) 241-7373. You may also designate an authorized agent to submit a request on your behalf by clicking here or calling toll-free at (866) 241-7373 and then also submitting written proof of such authorization via e-mail to dataprivacy@octitle .com.

***Verification Method.*** In order to ensure we do not inadvertently delete your personal information based on a fraudulent request, we will verify your identity before we respond to your request. To verify your identity, we will generally match the identifying information provided in your request with the information we have on file about you. Depending on the sensitivity of the personal information requested to be deleted, we may also utilize more stringent verification methods to verify your identity, including but not limited to requesting additional information from you and/or requiring you to sign a declaration under penalty of perjury.

**Right to Opt-Out**
We do not sell your personal information to third parties, and do not plan to do so in the future.

**Right of Non-Discrimination**
You have a right to exercise your rights under the CCPA without suffering discrimination. Accordingly, OC Title & family of Companies will not discriminate against you in any way if you choose to exercise your rights under the CCPA.

**California Minors**
If you are a California resident under the age of 18, California Business and Professions Code § 22581 permits you to request and obtain removal of content or information you have publicly posted on any of our Applications or Websites. To make such a request, please send an email with a detailed description of the specific content or information to dataprivacy@octitle .com. Please be aware that such a request does not ensure complete or comprehensive removal of the content or information you have posted and there may be circumstances in which the law does not require or allow removal even if requested.

**Collection Notice**
The following is a list of the categories of personal information we may have collected about California residents in the twelve months preceding the date this Privacy Notice was last updated, including the business or commercial purpose for said collection, the categories of sources from which we may have collected the personal information, and the categories of third parties with whom we may have shared the personal information:

**Categories of Personal Information Collected**
The categories of personal information we have collected include, but may not be limited to:

- real name
- signature
- alias
- SSN
- physical characteristics or description, including
- protected characteristics under federal or state law
- address

- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- employment history
- bank account number
- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

**Categories of Sources**
Categories of sources from which we've collected personal information include, but may not be limited to:
- the consumer directly

- public records
- governmental entities
- non-affiliated third parties
- affiliated third parties

**Business Purpose for Collection**
The business purposes for which we've collected personal information include, but may not be limited to:
- completing a transaction for our Products
- verifying eligibility for employment
- facilitating employment
- performing services on behalf of affiliated and non-affiliated third parties
- protecting against malicious, deceptive, fraudulent, or illegal activity

**Categories of Third Parties Shared**
The categories of third parties with whom we've shared personal information include, but may not be limited to:
- service providers
- government entities
- operating systems and platforms
- non-affiliated third parties
- affiliated third parties

**Sale Notice**
We have not sold the personal information of California residents to any third party in the twelve months preceding the date this Privacy Notice was last updated, and we have no plans to sell such information in the future. We also do not, and will not sell the personal information of minors under sixteen years of age without affirmative authorization.

**Disclosure Notice**
The following is a list of the categories of personal information of California residents we may have disclosed for a business purpose in the twelve months preceding the date this Privacy Notice was last updated.

- real name
- Signature
- Alias
- SSN
- physical characteristics or description, including protected characteristics under federal or state law

- employment history
- bank account number

If you have any questions and/or comments you may contact us:

Call Us at our toll free number (866) 241-7373
Email Us at dataprivacy@octitle .com

Revised on 1/24/2020 / Effective on 1/1/2020

- address
- telephone number
- passport number
- driver's license number
- state identification card number
- IP address
- policy number
- file number

- credit card number
- debit card number
- financial account numbers
- commercial information
- professional or employment information

**STG Privacy Notice 1 (Rev 01/26/09) Stewart Title Companies**

WHAT DO THE STEWART TITLE COMPANIES DO WITH YOUR PERSONAL INFORMATION?

Federal and applicable state law and regulations give consumers the right to limit some but not all sharing. Federal and applicable state law regulations also require us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand how we use your personal information. This privacy notice is distributed on behalf of the <<Underwriter Name>> and its affiliates (the Stewart Title Companies), pursuant to Title V of the Gramm-Leach-Bliley Act (GLBA).

The types of personal information we collect and share depend on the product or service that you have sought through us. This information can include social security numbers and driver's license number.

All financial companies, such as the Stewart Title Companies, need to share customers' personal information to run their everyday business—to process transactions and maintain customer accounts. In the section below, we list the reasons that we can share customers' personal information; the reasons that we choose to share; and whether you can limit this sharing.

| Reasons we can share your personal information | Do we share? | Can you limit this sharing? |
|---|---|---|
| **For our everyday business purposes**— to process your transactions and maintain your account. This may include running the business and managing customer accounts, such as processing transactions, mailing, and auditing services, and responding to court orders and legal investigations. | Yes | No |
| **For our marketing purposes**— to offer our products and services to you. | Yes | No |
| **For joint marketing with other financial companies** | No | We don't share |
| **For our affiliates' everyday business purposes**— information about your transactions and experiences. Affiliates are companies related by common ownership or control. They can be financial and nonfinancial companies. *Our affiliates may include companies with a Stewart name; financial companies, such as Stewart Title Company* | Yes | No |
| **For our affiliates' everyday business purposes**— information about your creditworthiness. | No | We don't share |
| **For our affiliates to market to you** | Yes | No |
| **For nonaffiliates to market to you.** Nonaffiliates are companies not related by common ownership or control. They can be financial and nonfinancial companies. | No | We don't share |

We may disclose your personal information to our affiliates or to nonaffiliates as permitted by law. If you request a transaction with a nonaffiliate, such as a third party insurance company, we will disclose your personal information to that nonaffiliate.  We do not control their subsequent use of information, and suggest you refer to their privacy notices.

| *Sharing practices* | |
|---|---|
| **How often do the Stewart Title Companies notify me about their practices?** | We must notify you about our sharing practices when you request a transaction. |
| **How do the Stewart Title Companies protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal and state law. These measures include computer, file, and building safeguards. |
| **How do the Stewart Title Companies collect my personal information?** | We collect your personal information, for example, when you<br>•request insurance-related services<br>•provide such information to us<br><br>We also collect your personal information from others, such as the real estate agent or lender involved in your transaction, credit reporting agencies, affiliates or other companies. |
| **What sharing can I limit?** | Although federal and state law give you the right to limit sharing (e.g., opt out) in certain instances, we do not share your personal information in those instances. |

| **Contact Us** | If you have any questions about this privacy notice, please contact us at: <<Underwriter Name>>, 1980 Post Oak Blvd., Privacy Officer, Houston, Texas 77056 |
|---|---|

File No.:  201456-LKWD-CH

**THIS ADDENDUM IS MADE PART OF THE POLICY AND IS PERMANENTLY AFFIXED HERETO**
**COLORADO ANTI-FRAUD DISCLOSURE**
**PURSUANT TO C.R.S. 10-1-128 (6)**

"It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

_____
Kia Lamicq

Wise Investments Limited LLC, a Colorado Limited Liability Company

By:_____
    Geoffrey Willcox, Member

Order No.: 201456-LKWD-CH

| | |
|---|---|
| Owner's Policy – Basic Rate | $  2,108.00 |
| 1st ½ Hold Open | $  211.00 |
| Tax Certificate | $  30.00 |
| TOTAL | $  2,349.00 |

Closing Protection Letter Fee (if applicable) $25.00

# Exhibit "D"

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF COLORADO**

| In re: | Case No. 26-10471-KHT |
|---|---|
| **KIA BERARDINELLI LAMICQ,** Debtor. | Chapter 13 |
| | Hon. Kimberley H. Tyson |

## ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS PURSUANT TO 11 U.S.C. §§ 363(b) AND (f)

THIS MATTER having come before the Court on the Debtor's Motion for Authority to Sell Real Property Free and Clear of Liens Pursuant to 11 U.S.C. §§ 363(b) and (f) (the "**Motion**"), filed by Kia Berardinelli Lamicq (the "**Debtor**"); proper notice of the Motion having been given to all parties entitled thereto; no timely objections having been filed; the Court having reviewed the Motion and the record in this Case, and being fully advised in the premises;

**THE COURT FINDS that:**

A. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M), and (N). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Adequate and proper notice of the Motion was provided in compliance with Fed. R. Bankr. P. 2002 and 6004 and the Local Bankruptcy Rules, and no further notice is necessary or required.

C. The Debtor has demonstrated a sound business justification for the proposed sale of the real property commonly known as 704 Huntington Drive, Highlands Ranch, Colorado 80126-4741 (the "**Property**"). The proposed sale is in the best interests of the Debtor, the estate, and creditors.

D. The proposed sale satisfies the requirements of 11 U.S.C. § 363(f). The Purchase Price of $586,000.00 exceeds the aggregate value of all liens on the Property within the meaning of § 363(f)(3). In addition, NBH Bank has consented to the sale within the meaning of § 363(f)(2), and each lienholder could be compelled to accept a money satisfaction of its lien within the meaning of § 363(f)(5).

E.  Wise Investments Limited (the "**Buyer**") is a good faith purchaser within the meaning of 11 U.S.C. § 363(m). The sale was negotiated at arm's length, the Buyer is unaffiliated with the Debtor, no broker commissions are payable, and the Purchase Price is fair and reasonable.

**ACCORDINGLY, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:**

1.  The Motion is **GRANTED**.

2.  The Debtor is authorized, pursuant to 11 U.S.C. § 363(b), to sell the Property to the Buyer on the terms set forth in the Contract to Buy and Sell Real Estate (Residential)(Colorado Foreclosure Protection Act) dated April 22, 2026, as amended (the "**CBS**"), attached to the Motion as Exhibit A, for a Purchase Price of $586,000.00.

3.  The Debtor is authorized to execute reasonable amendments to the CBS, including without limitation amendments extending the Closing Date and refreshing cancellation-notice timelines, as necessary to accommodate this Court's approval process and standard real estate closing requirements, without further order of this Court.

4.  The sale shall be **FREE AND CLEAR** of all liens, claims, encumbrances, and other interests pursuant to 11 U.S.C. § 363(f), with such liens, claims, encumbrances, and other interests to attach to the proceeds of sale in their existing order of priority and to be paid as provided in Paragraph 5 below. Upon recordation of the deed transferring the Property to the Buyer, the liens released in accordance with Paragraph 5 shall be deemed released of record.

5.  At Closing, the closing agent is authorized and directed to disburse the gross sale proceeds in the following order of priority, and the Debtor, undersigned counsel, and the closing agent are authorized to take all actions necessary to effectuate the disbursement without further order of this Court:

    (a) Customary and reasonable closing costs, prorations, transfer taxes, recording fees, and title charges payable by the Seller, as reflected on the final HUD-1 / ALTA Settlement Statement;

**(b)** Payoff in full of the first deed of trust held by NBH Bank in accordance with a written payoff statement valid through Closing (estimated payoff approximately $410,143.47, plus per diem interest and customary recording charges through the payoff date);

**(c)** Payoff in full of the second deed of trust held by Tri State Mortgage in accordance with a written payoff statement valid through Closing (scheduled balance approximately $45,000.00);

**(d)** Payoff in full of the assessment / statutory lien of the Highlands Ranch Community Association, Inc., including all pre-petition and post-petition assessments, late fees, attorneys' fees, and costs allowed by this Court or set forth in a written payoff statement provided by HRCA;

**(e)** Payoff in full of any other lien of record on the Property in priority order as shown on the title commitment;

**(f)** The net balance to the Debtor as exempt homestead funds pursuant to Colo. Rev. Stat. § 38-41-201, et seq. (subject to the statutory homestead cap then in effect), free and clear of any claim of the chapter 13 trustee or any unsecured creditor; provided, however, that any portion of the net proceeds in excess of the Debtor's allowed Colorado homestead exemption shall be paid to the chapter 13 trustee for distribution under the Debtor's chapter 13 plan.

6. Each lienholder paid in full pursuant to Paragraph 5 shall, within ten (10) business days of receipt of payment in accordance with its written payoff statement, execute and deliver to the closing agent all instruments necessary or appropriate to release its lien of record. To the extent any lienholder fails to do so, this Order shall serve as a release of such lien and may be recorded in the real property records of Douglas County, Colorado.

7. The Buyer is determined to be a good faith purchaser pursuant to 11 U.S.C. § 363(m), and is entitled to the full protections of that section.

8. The Debtor is authorized to provide post-closing occupancy of the Property to the Buyer for up to three (3) weeks following Closing pursuant to the Post-Closing Occupancy Agreement executed by the Debtor and the Buyer.

9. Within thirty (30) days after Closing, the Debtor shall file with this Court a Report of Sale that includes a copy of the final HUD-1 / ALTA Settlement Statement and a brief accounting of the disbursements made in accordance with Paragraph 5.

10. The stay imposed by Fed. R. Bankr. P. 6004(h) is hereby **WAIVED**, and this Order shall be effective immediately upon entry.

11. This Court retains jurisdiction to interpret and enforce the terms of this Order.

**Dated:** _____, **2026.**

                                                                **BY THE COURT:**

_____

                                                           Kimberley H. Tyson
                                 United States Bankruptcy Judge

Submitted by:
**RIGGI LAW FIRM**
**By: /s/ David A. Riggi**
David A. Riggi
4610 S. Ulster Street, Suite 150, Denver, CO 80237-4326
riggilaw@gmail.com  /  (702) 463-7777
Counsel for the Debtor